# EXHIBIT A

| VOLUME: NUMBER – TOPIC | CHAPTER: NUMBER – TOPIC | |
|---|---|---|
| **CG Inmate Management** | **CG 34** | **Special Handling: Contract Inmates** |
| PUBLISHED | PREVIOUS REVIEW | SUPERSEDES | SCHEDULED REVIEW | PAGES |
| **06/02/05** | **10-18** | NA | **2-20** | **9** |
| TO BE REVIEWED BY | | APPROVED BY | | |
| **JAIL LIEUTENANT** | | **Sheriff D. Chad Jensen** | | |

## TABLE OF CONTENTS

CG 34/01.00   **GENERAL PROVISIONS**
CG 34/01.01   Purpose of Chapter
CG 34/01.02   Distribution
CG 34/01.03   Definitions
CG 34/01.04   Utah Jail Standards References

CG 34/02.00   **INMATE MANAGEMENT**
CG 34/02.01   Policy
CG 34/02.02   Rationale
CG 34/02.03   Procedure: General
CG 34/02.04   Procedure: Emergency Notification
CG 34/02.05   Procedure: Classification
CG 34/02.06   Procedure: Housing
CG 34/02.07   Procedure: Discipline

CG 34/03.00   **BASIC NECESSITIES OF LIFE**
CG 34/03.01   Policy
CG 34/03.02   Rationale
CG 34/03.03   Procedure: General
CG 34/03.04   Procedure: Food Services
CG 34/03.05   Procedure: Health Care Services

CG 34/04.00   **SERVICES AND PROGRAMS**
CG 34/04.01   Policy
CG 34/04.02   Rationale
CG 34/04.03   Procedure: Education and Treatment Programs
CG 34/04.04   Procedure: Commissary

## CG 34/01.00 GENERAL PROVISIONS

### CG 34/01.01 PURPOSE OF CHAPTER

The purpose of this chapter is to provide the Cache County Jail's policies and procedures governing the housing, services, programs, and security for contract inmates being housed at the CCJ for any other agency.

### CG 34/01.02 DISTRIBUTION

Standard distribution

### CG 34/01.03 DEFINITIONS

| | |
|---|---|
| **BOP** | Utah State Board of Pardons and Parole |
| **CCJ** | Cache County Jail |
| **IDHD** | Inmate Disciplinary Hearing Deputy |
| **IPP** | Inmate Placement Program |
| **MX** | maximum security classification |
| **UDC** | Utah State Department of Corrections |
| **USM** | United States Marshal (Federal) |
| **USP** | Utah State Prison |

### CG 34/01.04 UTAH JAIL STANDARDS REFERENCES

| | |
|---|---|
| B 01.01.01 | Authority to Operate Jail |
| B 01.01.03 | Facility Administrator |
| D 02.01.01 | Written Policy and Procedure Required |
| D 06.01.01 | Policy and Procedure for Major Violations |
| D 06.01.02 | Policy and Procedure for Minor Violations |
| D 06.02.01 | Documenting Disciplinary Violations |
| E 04.01.01 | Written Policy and Procedure Required |
| E 04.01.02 | Content |
| G 02.01.01 | Written Policies and Procedures Required |
| G 03.01.01 | Written Policies and Procedures Required |
| H 01.01.01 | Written Policy and Procedure Required |
| H 01.02.01 | General Access to Requirements |
| H 01.02.02 | Responsibility and Authority for Health Care Delivery |
| H 01.02.03 | Cost of Health Care Services |
| H 04.01.01 | Written Policies and Procedures Required |
| J 03.01.01 | Policies and Procedures Required |
| J 04.01.01 | Policies and Procedures Required |

CG 34/02.00 **INMATE MANAGEMENT**

CG 34/02.01 **POLICY**

It is the policy of the Cache County Jail (CCJ) that:
- A. contract inmates shall be managed according to the same policies, procedures, and security requirements as county inmates;
- B. authorized exceptions shall be in writing in accordance with the provisions of this chapter, or authorized by the Jail Lieutenant on a temporary basis in a special or general order of the CCJ;
- C. contract inmates shall not be allowed home visits, funeral leave, furloughs, etc; and
- D. the standards set forth under the Federal Prison Rape Elimination Act (PREA) will be followed, and that contract inmates will be provided the necessary information on procedures to follow should they become a victim of sexual abuse.

CG 34/02.02 **RATIONALE**

It would be inefficient, confusing, and impractical to have two independent operational systems: one for county inmates and one for contract inmates.

CG 34/02.03 **PROCEDURE: GENERAL**
- A. Contract inmates are housed in the CCJ by mutual agreement of the contract agency's officials and CCJ officials. By entering into such an agreement, the Cache County Sheriff's Office does not relinquish its authority to determine the policies and procedures under which the CCJ will operate.
    1. The Sheriff retains his authority as the statutory keeper of the jail.[1]
    2. The Jail Lieutenant, as the delegated administrator of the CCJ, likewise retains his authority to determine and authorize the policies and procedures which will guide and direct the jail operation.
    3. Each agency that contracts inmates to the CCJ will have an assigned point of contact.
        - a. UDC point of contact will be the IPP Director.
        - b. USM point of contact will be the Court Operations Supervisor.
- B. Contract inmates often demand and may believe they are entitled to be governed under the rules and regulations of the contract agency that they are being housed for; however, the CCJ operates independent of any contract agency authority. Inmates being held for any other agency are subject to and must comply with CCJ rules and regulations, even when county policies and procedures differ from those of the contract agency.
- C. Representatives of the UDC/USM should have unrestricted access to the CCJ and state/federal inmates to include both announced and unannounced visits.
- D. UDC/USM representatives may review or inspect the jail at anytime; however, the Jail Lieutenant should be notified when these inspections occur. Notification of regular after-hour visits may be made through e-mail. Access to the CCJ may be restricted during critical incidents.

---

[1] UCA §17-22-4.

**CG 34/02.04 PROCEDURE: EMERGENCY NOTIFICATION**
- A. **Notifications Made to Conrol One**
    1. Immediate notification shall be made to Control One in the event of an escape of a state inmate.
    2. Notification will be made to Control One within one hour of a PREA report being made known to CCJ staff.
    3. Notifications will be made as soon as reasonably possible in the event of:
        a. a state inmate's death;
        b. a medical emergency involving a state inmate;
        c. violent incidents involving state inmates; i.e. assaults with injury, riots, etc;
        d. events involving non-state inmates that significantly impact the security of the facility; and
        e. civil or natural disasters that affect the security of the CCJ.
- B. **Notifications Made to to USM**
    Notification will be made as soon as reasonably possible to the USM point of contact in the event of:
    a. escapes of federal inmates;
    b. violent incidents involving federal inmates;
    c. medical emergencies involving federal inmates; and
    d. multiple grievances of a serious nature filed by a federal inmate;

**CG 34/02.05 PROCEDURE: CLASSIFICATION**
The Utah State Prison (USP) has significantly more information on the individuals they send to county facilities and the CCJ will not accept anyone below a Level 3 on the USP classification system.
- A. **General**
    1. Classification of contract inmates shall follow the general requirements set forth for all CCJ inmates, with the exception that their current USP classification will be taken into account.
        a. All contract inmates should initially be classified in a no less restrictive classification than medium security.
    2. Because of the comprehensive and objective nature that may be involved in any other agency's inmate classification system, the CCJ classification deputy shall carefully review and consider the results of the other agency's classification of the inmate.
    3. It must be remembered, however, that many other agencies' classifications are intended to serve a higher population and a system larger than the CCJ. It may not work as well for a jail the size and configuration of the CCJ.

**CG 34/02.06 PROCEDURE: HOUSING**
- A. There is no legal requirement to segregate contract inmates from county inmates.
- B. The critical concerns for classification and housing of both contract and county inmates are:
    1. staff and inmate safety; and
    2. facility security and order.

    C.    It is much more beneficial to these important interests that inmates be separated on the basis of dangerousness, vulnerability, and other safety/security concerns, than to rely on the inmate's legal status or point of progression through the system.

    D.    Housing determinations shall be made to achieve administrative convenience and to meet the operational, safety, security, order, and discipline needs of the CCJ.

    E.    UDC inmates should not be housed permanently in a holding cell.
        1.    UDC inmates may temporarily be housed in a holding cell, but not to exceed eight consecutive hours.

## CG 34/02.07 PROCEDURE: DISCIPLINE

A. **General**
1. Contract inmates are aware that from jail to jail there are significant differences in staff experience, determination, decisiveness, tolerance of misconduct, lenience in punishing rule violations, and consistency among shifts. Inmates will often test jail officials to see how far they can push, to wear staff down, to intimidate or manipulate staff, to determine which staff members are most vulnerable, and exploit any weakness or lack of resolve which they discover.
2. Inmates may also violate rules and engage in misconduct to further other agendas, such as getting moved from a jail they consider to be an undesirable venue.
3. It is important that jail officials make it clear to inmates that they cannot be manipulated into moving the inmates. At the same time, it is important for jail officials to create strong disincentives for misconduct to prevent or control such behavior. Disincentives may include, but are not limited to:
    a.    a zero-tolerance policy which requires disciplinary write-ups for all but the most minor misconduct;
    b.    strong disciplinary penalties for inmates determined to be guilty of misconduct;
    c.    daily briefings of the shift reporting to work by the shift being relieved; and
    d.    submitting misconduct reports and recommendations directly to the Utah State Board of Pardons and Parole (BOP) for those state inmates or to whichever other agency's inmate may be involved.

B. **Reports to Board of Pardons and Parole**
1. The BOP must consider disciplinary records as one of several factors to determine whether an inmate has been sufficiently "rehabilitated" to justify conditionally releasing the inmate on parole prior to the full completion of his sentence. Certainly, an inmate who cannot comply with established rules in a structured environment such as the CCJ is even less likely to comply with laws and release agreement conditions when running free in the community.
    a.    Information regarding inmates' conduct while incarcerated at the CCJ can aid BOP members in setting parole dates.

    b. For inmates who have already been given a parole date, the BOP is empowered to cancel the release date if subsequent conduct is sufficient to cast doubt on the readiness of the inmate to comply with the law and/or release conditions upon being paroled to the community.

2. It is important that the BOP be made aware of the demonstrated willingness or resistance exhibited by IPP inmates to comply with jail regulations. It is also important that CCJ officials evaluate IPP inmates on their level of commitment to meeting the conditions of their parole release.

    a. While UDC prison officials do provide reports to the BOP which include the inmates' disciplinary offenses and information concerning inmates' jail conduct, these reports may get lost within the larger report or receive limited importance.

    b. CCJ officials can, by submitting a separate report to the BOP (in addition to reporting inmates' conduct to the UDC), increase the amount of consideration the BOP gives to CCJ officials' recommendations and inmate conduct summaries.

3. When an IPP inmate is found guilty of a major conduct violation, a brief report should be submitted to the IPP Coordinator by the IDHD under the signature of the Jail Lieutenant. This report will be forwarded to the BOP by the IPP Coordinator. The report should include, at a minimum:

    a. the inmate's name and USP number;
    b. the date and location of the offense (i.e., the CCJ, the District Court, a hospital);
    c. the number and title of the rule violated;
    d. a brief description of the incident, behavior, or actions which were the basis for the disciplinary action;
    e. the disposition (findings and penalties) of the misconduct allegations;
    f. if necessary, a recommendation from the Jail Lieutenant and/or Cache County Sheriff regarding the future release of the offender to the community and the rationale for the recommendation; and
    g. a request to the IPP Coordinator to notify the CCJ regarding the actions taken (or inaction) by the BOP in response to the CCJ report.

4. To increase the effectiveness of the BOP notification policy:

    a. all IPP inmates should be notified of this policy during orientation, and should be reminded again at each discipline hearing to ensure that they understand that CCJ officials will not tolerate and will aggressively respond to inmate misconduct and any attempts to manipulate or intimidate staff; and

    b. if within 30 days BOP officials fail to provide the requested information concerning the action/inaction taken as a result of the disciplinary summaries submitted by the CCJ, follow-up requests regarding the inmate's status should be made to the BOP by the Jail Lieutenant (or designee).

    5. If the BOP fails to respond, the matter will be referred to the Sheriff to determine whether additional action is required by the CCJ. The Executive Director of the Utah Sheriffs' Association should also be notified of any failure of the BOP to respond to CCJ officials.
    6. If an inmate from an agency other than the UDC is involved, that agency should be notified and whatever documentation, if any, that agency requires for disciplinary problem inmates should be taken care of by the IDHD of the CCJ.
  C. **Federal Inmates**
    1. Federal inmates are subject to the same disciplinary policies and procedures as all county inmates.
    2. USM should be notified of any major disciplinary action taken against a federal inmate. Making notification is the responsibility of the CCJ designated point of contact for USM.

## CG 34/03.00   BASIC NECESSITIES OF LIFE

### CG 34/03.01   POLICY

It is the policy of the CCJ that contract inmates shall not be denied the basic necessities of life.

### CG 34/03.02   RATIONALE

The Constitution prohibits jail officials from depriving inmates the basic essentials of life (i.e., shelter, food, medical care, recreation, sanitation, reasonable protection from violence).

### CG 34/03.03   PROCEDURE: GENERAL

  A. Except as otherwise indicated, CCJ policies for providing inmates the basic essentials of life shall be the same for both contract and county inmates.
  B. As long as the CCJ provides the basic essentials at or exceeding minimal constitutional levels, the contract inmates are not entitled to, nor shall they receive, more.

### CG 34/03.04   PROCEDURE: FOOD SERVICES

  A. At a minimum, food service shall meet constitutional requirements.
  B. If the other agency's officials have established the need for a special diet to meet an inmate's medical needs, the CCJ shall meet the requirements of that diet unless and until the CCJ's medical staff determines the special diet is no longer needed. If a medical diet is terminated by the CCJ medical staff, CCJ officials shall notify the other agency's officials.
  C. If the other agency's officials have authorized a special diet to meet an inmate's religious needs, the CCJ may meet the requirements of that diet unless and until the Jail Lieutenant determines the special diet conflicts with CCJ policy regarding religious diets. If a religious diet is terminated by the Jail Lieutenant, the other agency's officials shall be notified.

### CG 34/03.05   PROCEDURE: HEALTH CARE SERVICES

  A. Health care services provided to contract inmates shall be the same as that provided for county inmates, with the exception of UDC inmates.

1. UDC inmates will receive their health care from a physician's assistant assigned by the UDC, with the exception of emergency (life threatening) care. If a UDC inmate is transported outside the CCJ for medical reasons, Control One shall be notified as soon as reasonably possible.
2. The UDC will have a physician's assistant who visits their inmates on a weekly/as needed basis. The physician's assistant will provide all medications, appointments, surgeries, etc., for all UDC inmates.
3. Pre-approval of medical/dental services by locally contracted providers should be obtained through UDC prior to the services being rendered. Transportation to local appointments will be the repsonsiblity of the CCJ.

B. At a minimum, health care services shall meet constitutional requirements.
C. The CCJ shall require that agencies contracted with the CCJ provide information concerning the medical needs of each inmate received for the IPP system.
D. All contract agencies shall reimburse the CCJ for the direct costs of providing health care to their inmates.

## CG 34/04.00 SERVICES AND PROGRAMS
### CG 34/04.01 POLICY
It is the policy of the CCJ that:
A. Contract inmates shall be provided those services and programs necessary to ensure protection of their constitutional and statutory rights and to serve the penological interests of the CCJ; and
B. services and programs provided to county and contract inmates shall be the same; although, some treatment or work programs may be limited to only one class of inmates.

### CG 34/04.02 RATIONALE
A. The Constitution, while generally protecting inmates' access to mail, visitation, and telephones, allows jail officials to restrict and regulate that access to meet legitimate administrative needs.
B. Inmates have no constitutional right to rehabilitation or other programs. Some education and treatment programs may, however, be required by Utah statutes.
C. Program availability may be restricted for programs offered to fulfill specific legal requirements.

### CG 34/04.03 PROCEDURE: EDUCATION AND TREATMENT PROGRAMS
A. Contract inmates, depending on their classification level assigned by the CCJ, may be permitted to participate in all education and treatment programs available to county inmates. Contract inmates may only participate in education and treatment programs if approved to do so by the agency they are housed in the CCJ for; i.e. USM, IPP, etc.
B. County inmates, depending on their classification level assigned by the CCJ, shall be permitted to participate in all education and treatment programs available to contract inmates.

**CG 34/04.04** **<u>PROCEDURE: COMMISSARY</u>**
    A.    Contract inmates shall be permitted to make purchases from the CCJ commissary if they have the funds to cover purchases. For inmates without funds, refer to CL 03, "Indigent Status."
    B.    Contract inmates are not entitled to a commissary inventory equal to that available at the other agencies. Some items sold by other agencies' commissaries are not offered at the CCJ, and, in fact, in most cases items purchased at other agencies' commissaries will be considered contraband at the CCJ.
    C.    Contract inmates may not possess any items purchased through other agencies. The fact that such material was purchased from the other agency's commissary or by subscription while incarcerated in the other agency shall not create a right for the inmate to possess such materials in the CCJ.
        1.    Any food items (opened or unopened) received during the booking process for contract inmates will be destroyed.
        2.    All other property will be kept in the inmate's property locker. If that property exceeds the storage capacity of the locker, the inmate will be responsible for its removal. If the property is not able to be removed, then CCJ officials may dispose of the property per policy.