# EXHIBIT E

| VOLUME: NUMBER -- TOPIC | | CHAPTER: NUMBER -- TOPIC | | |
|---|---|---|---|---|
| **CJ Inmate Communication** | | **CJ 13** | **Mail: Books and Publications** | |
| PUBLISHED | PREVIOUS REVIEW | SUPERSEDES | SCHEDULED REVIEW | PAGES |
| **03-12-07** | **8-19** | NA | **2-20** | **6** |
| TO BE REVIEWED BY | | APPROVED BY | | |
| **JAIL LIEUTENANT** | | **Sheriff D. Chad Jensen** | | |

## TABLE OF CONTENTS

CJ 13/01.00    **GENERAL PROVISIONS**
CJ 13/01.01    Purpose of Chapter
CJ 13/01.02    Distribution
CJ 13/01.03    Definitions
CJ 13/01.04    Utah Jail Standards References

CJ 13/02.00    **ACCESS TO BOOKS AND PERIODICALS**
CJ 13/02.01    Policy
CJ 13/02.02    Rationale
CJ 13/02.03    Procedure: General
CJ 13/02.04    Procedure: Restrictions on Content

CJ 13/03.00    **BOOKS**
CJ 13/03.01    Policy
CJ 13/03.02    Rationale
CJ 13/03.03    Procedure: Access to Books
CJ 13/03.04    Procedure: Receiving Books
CJ 13/03.05    Procedure: Searching Incoming Books
CJ 13/03.06    Procedure: Publisher-Only Rule
CJ 13/03.07    Procedure: Increased Cost of Books for Inmates

CJ 13/04.00    **PERIODICALS**
CJ 13/04.01    Policy
CJ 13/04.02    Rationale
CJ 13/04.03    Procedure: General
CJ 13/04.04    Procedure: Notification to Publishers

**CJ 13/01.00  GENERAL PROVISIONS**

**CJ 13/01.01  PURPOSE OF CHAPTER**

The purpose of this chapter is to provide the Cache County Jail's policies and procedures governing books and periodicals for inmates in the CCJ.

**CJ 13/01.02  DISTRIBUTION**

Standard distribution.

**CJ 13/01.03  DEFINITIONS**

| | |
|---|---|
| **CCJ** | Cache County Jail |
| **content neutral** | evaluating the content of material without value judgment regarding the ideas it expresses |
| **OIC** | officer-in-charge |
| **publisher-only rule** | a rule which prohibits inmates from receiving books from outside the CCJ that are not sent by the publisher, a book club, or other commercial supplier |

**CJ 13/01.04  UTAH JAIL STANDARDS REFERENCES**

E 01.01.01   Written Policy and Procedure Required
E 01.01.02   Content
E 01.02.01   Function
E 01.04.01   Publisher-Only Rule

**CJ 13/02.00  ACCESS TO BOOKS AND PERIODICALS**

**CJ 13/02.01  POLICY**

It is the policy of the Cache County Jail (CCJ) to provide inmates with access to books and periodicals without degrading safety, security, order, and other legitimate CCJ interests.

**CJ 13/02.02  RATIONALE**

A. Access to reading material is provided because:
 1. access is required by the First Amendment;[1]
 2. reading is generally educational and beneficial to the inmate; and
 3. reading occupies inmates' time in a positive manner.
B. Close regulation of the manner in which books and other reading material enter the CCJ is necessary to further the safety and security interests of the facility. This helps prevent the introduction of contraband and information which may incite unlawful behavior by inmates.

**CJ 13/02.03  PROCEDURE: GENERAL**

A. Reading is an activity encouraged for inmates.

---

[1] **Thornburgh v. Abbott**, 109 S.Ct. 1874 (1989); **Bell v. Wolfish**, 441 U.S. 520, 551 (1979).

  B. The means by which books and periodicals enter the facility shall be closely regulated.
  C. Regulation shall further the safety, security, order, discipline, and other legitimate interests of CCJ officials to:
    1. prevent the introduction of contraband into the CCJ; and
    2. interdict the introduction of materials which would incite or encourage unlawful acts or violations of CCJ rules and regulations.

**CJ 13/02.04** **PROCEDURE: RESTRICTIONS ON CONTENT**
  A. CCJ policies and procedures regulating the introduction of reading material into the jail shall be content neutral. The rules regulating review of reading material shall operate in a neutral fashion, without regard to the content of the expression.[2]
  B. Content may be restricted when CCJ officials can articulate a threat to CCJ's safety, security, order, discipline, and/or other legitimate penological interests.
  C. Material which may threaten legitimate penological interests may include, but is not limited to:
    1. sexually-oriented material;[3]
    2. material which threatens safety or security;[4] and
    3. inflammatory material which could potentially incite.
  D. Mere criticism of the administration, operation, or personnel of the CCJ, Cache County, or of any other government official or agency shall not constitute a threat to the security and safety of the facility unless that material advocates:
    1. violence;
    2. disorder; or
    3. other illegal action.
  E. No publication shall be considered inappropriate or inflammatory solely on the basis of its appeal to a particular ethnic, racial, or religious audience.

**CJ 13/03.00** **BOOKS**

**CJ 13/03.01** **POLICY**
  It is the policy of the CCJ to:
  A. provide library services for inmates;
  B. permit books to be received from outside the CCJ that conform to the publisher-only rule; and
  C. employ security measures to prevent contraband from being introduced in books brought or sent to the CCJ.

**CJ 13/03.02** **RATIONALE**
  Close regulation of the manner in which books enter the CCJ is necessary to

---

[2]**Bell v. Wolfish**, 441 U.S. 520, 551 (1979).
[3]Refer to CL 04, "Restriction of Sexually-Oriented Materials."
[4]Refer to CJ 10, "Mail: Standard Process."

further the safety and security interests of the facility, such as preventing introduction of contraband, excluding information which would incite unlawful behavior by inmates, and maximizing scarce staff and other resources. There is a potential for serious security and administrative problems when books are received by inmates from sources outside the facility.[5]

**CJ 13/03.03   PROCEDURE: ACCESS TO BOOKS**
- A.   The CCJ facilitates access to books and encourages reading by inmates.
- B.   To this end, the CCJ provides a general reading library and provides a means by which inmates can obtain additional books from outside the facility.
- C.   To further the legitimate penological interests of the CCJ, the process for receiving books from outside sources shall be closely regulated.
- D.   No hard-backed books will be kept in the inmate library. If hardback books are donated, they will either be disposed of by the CCJ staff or donated to a charitable organization.
- E.   Books brought with an inmate from another facility shall be searched by staff and placed into the inmate's property locker. An inmate may request the book from the Programs Coordinator. The Programs Coordinator shall have the inmate sign an Inmate Book Receipt. The procedure in CJ 13/03.04 B is then followed.

**CJ 13/03.04   PROCEDURE: RECEIVING BOOKS**
- A.   All books received by the CCJ by mail shall be forwarded to the Programs Coordinator for processing. The Programs Coordinator shall:
  1.   ensure that the books are searched; and
  2.   ensure that the approved books are delivered to the inmate.
     - a.   The Programs Coordinator shall have the inmate sign an Inmate Book Receipt, indicating agreement to donate the books to the CCJ Library.
     - b.   If the inmate does not agree to donate the books to the CCJ Library, it must be indicated on the Inmate Book Receipt, and a copy of the receipt, along with the book shall be placed in the inmate's property locker or the inmate has the option of mailing out the books at the inmate's expense within 10 days. The book must also be added to the property log in the Take screen in the inmate's booking.
     - c.   The original Inmate Book Receipt shall be placed in the inmate's booking file.
- B.   If the Programs Coordinator discovers that books have not been approved for possession by the inmate, the Programs Coordinator shall ensure that the books are deposited in the inmate's property locker.
- C.   Any requests for exceptions (i.e., religious, legal, or school books) must be approved by the Jail Lieutenant or his designee. The inmate must provide detailed reasons for the exception.

---

[5]**Bell v. Wolfish**, 441 U.S. 520, 548 (1979).

**CJ 13/03.05**    **PROCEDURE: SEARCHING INCOMING BOOKS**
- A. All incoming books have the potential for introducing contraband.
- B. It is easy to hide flat items between the pages, place drugs on the pages, insert needles or other items into the bindings, to remove and re-glue bindings for hiding material, cut out pages to insert weapons and other contraband, and otherwise secret items to be smuggled into the CCJ.
- C. All books coming into the facility should be searched by staff before they are made available to inmates.

**CJ 13/03.06**    **PROCEDURE: PUBLISHER-ONLY RULE**
- A. To accomplish a complete and thorough search of a book, it would be necessary to remove the binding and take other measures which would essentially dismantle and destroy the book. Such searches would also be time consuming and burdensome on staff.
- B. To greatly reduce the threat that books will be used as devices to smuggle contraband, the CCJ shall require a *publishers-only rule*, which will require that all books, other than books in the general library, will have to be received directly from the publisher, a book club (i.e., Book of the Month Club, History Book Club), or a book store.
- C. No hardback books will be accepted because of the increased ability to use these books to smuggle contraband into the CCJ. The publisher-only rule is a rational response to an obvious security problem. "It hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons may easily be secreted in the bindings."[6]
- D. If books from a certain publisher, book club, or commercial book store is found to have contraband, the CCJ may suspend and/or deny incoming books from that source.
    1. Information about the violation should be documented on the CCJ computer system.
    2. The shift sergeant or OIC should be notified of the violation.
    3. If access to the CCJ is suspended or denied, a letter stating such shall be sent to the publisher, book club, or commercial book store from the shift sergeant or OIC.

**CJ 13/03.07**    **PROCEDURE: INCREASED COST OF BOOKS FOR INMATES**
- A. The publisher-only rule will result in a greater cost to inmates because they will have to obtain new books rather than receiving free used books.
- B. The additional cost is justified to further security interests and limit the expenditures of limited staff, budget, and other CCJ resources. "To the limited extent the rule might possibly increase the cost of obtaining published materials, th[e] Court has held that where other avenues remain available for the receipt of materials by inmates, the loss of cost advantages does not fundamentally implicate free speech values."[7]

---

[6] **Bell v. Wolfish**, 441 U.S. 520, 550-551 (1979).
[7] **Bell v. Wolfish**, 441 U.S. 520, 552 (1979).

## CJ 13/04.00  PERIODICALS

### CJ 13/04.01  POLICY

It is the policy of the CCJ to:
A. provide library services for inmates;
B. employ security measures to prevent contraband from being introduced in periodicals brought to the CCJ; and
C. minimize the administrative burden created by having to manage periodical subscriptions and deliveries.

### CJ 13/04.02  RATIONALE

A. Close regulation of the manner in which periodicals enter the CCJ is necessary to further the safety and security interests of the facility, such as preventing introduction of contraband, excluding information which would incite unlawful behavior by inmates, and maximizing scarce staff and other resources. There is a potential for serious security and administrative problems when periodicals are received by inmates from sources outside the facility.[8]
B. An additional problem with periodicals is the management of ongoing subscriptions and dealing with subscriptions after inmates leave.

### CJ 13/04.03  PROCEDURE: GENERAL

A. No inmate will be allowed personal subscriptions to periodicals. The CCJ provides periodicals in the library.
B. All loose materials, cards, or ads will be removed before distribution to inmates.
C. If a periodical comes that has material content that may threaten legitimate penological interests, the programs deputy may:
   1. discard the publication; or
   2. take any other action convenient to the CCJ operation.

### CJ 13/04.04  PROCEDURE: NOTIFICATION TO PUBLISHERS

When the CCJ receives an inmate's personal subscription to any periodical, including newspapers and magazines, the staff member processing the mail shall do the following:
A. the periodical shall be stamped with the "Return to Sender - Unauthorized Material" stamp, with the "Other" box checked, followed with the statement "No Personal Subscriptions Allowed";
B. the staff member shall then return the periodical to the mail box with the outgoing mail;
C. the staff member shall fill out a "Notification to Publisher" form and forward it to the CCJ Administration office; and
D. the CCJ Administration office shall then mail out the form to the publisher. A copy of the notification will be placed in a vendor file for the particular publisher.

---

[8] **Bell v. Wolfish**, 441 U.S. 520, 548 (1979).