# EXHIBIT H

| VOLUME: NUMBER – TOPIC | | | CHAPTER: NUMBER – TOPIC | |
|---|---|---|---|---|
| **CL Inmate Services** | | | **CL 50      Religion: Overview** | |
| PUBLISHED | PREVIOUS REVIEW | SUPERSEDES | SCHEDULED REVIEW | PAGES |
| **12/15/04** | **11-18** | **NA** | **3-20** | **5** |
| TO BE REVIEWED BY | | | APPROVED BY | |
| **JAIL LIEUTENANT** | | | **Sheriff D. Chad Jensen** | |

## TABLE OF CONTENTS

CL 50/01.00  **GENERAL PROVISIONS**
CL 50/01.01  Purpose of Chapter
CL 50/01.02  Distribution
CL 50/01.03  Definitions
CL 50/01.04  Utah Jail Standards References

CL 50/02.00  **FREE EXERCISE OF RELIGION**
CL 50/02.01  Policy
CL 50/02.02  Rationale
CL 50/02.03  Procedure: General
CL 50/02.04  Procedure: Substantial Burden
CL 50/02.05  Procedure: Compelling Necessity
CL 50/02.06  Procedure: Least Restrictive Means

CL 50/03.00  **DISAGREEMENT RESOLUTION**
CL 50/03.01  Policy
CL 50/03.02  Rationale
CL 50/03.03  Procedure: Inmate Complaints
CL 50/03.04  Procedure: Clergy Complaints

**CL 50/01.00 GENERAL PROVISIONS**

**CL 50/01.01 PURPOSE OF CHAPTER**

The purpose of this chapter is to provide an overview of the Cache County Jail's policies and procedures governing free exercise of religion for inmates.

**CL 50/01.02 DISTRIBUTION**

Standard distribution.

**CL 50/01.03 DEFINITIONS**

| | |
|---|---|
| **CCJ** | Cache County Jail |
| **religious exercise** | "any exercise of religion whether or not compelled by, or central to, a system of religious belief"[1] |
| **Religious Land Use and Institutionalized Persons Act of 2000** | an act passed by the U.S. Congress creating special religious rights for inmates; successor to the Religious Freedom Restoration Act of 1993 struck down by the U.S. Supreme Court as unconstitutional[2] |
| **RFRA** | Religious Freedom Restoration Act of 1993 |
| **RLUIPA** | Religious Land Use and Institutionalized Persons Act |
| **substantial** | something actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable[3] |

**CL 50/01.04 UTAH JAIL STANDARDS REFERENCES**

J 06.01.01   Written Access to Religion Policies and Procedures Required
J 06.01.02   Content: Access to Religion
J 06.02.01   Right to Free Exercise of Religion
J 06.02.02   Restricting Prisoners Free Exercise of Religion
J 06.03.01   Access to Free Exercise of Religion

**CL 50/02.00 FREE EXERCISE OF RELIGION**

**CL 50/02.01 POLICY**

It is the policy of the Cache County Jail (CCJ) to protect and facilitate inmates' lawful free exercise of religion.

**CL 50/02.02 RATIONALE**

Both the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) "protects prisoners and other institutionalized

---

[1] 42 USC §2000cc-5(7)(A).
[2] **Boerne v. Flores**, 521 U.S. 507 (1997).
[3] Black, Henry Campbell, *Black's Law Dictionary,* Special Deluxe Fifth Edition, West Publishing: St. Paul (1979).

persons from government infringement on their practice of religion."[4]

**CL 50/02.03  PROCEDURE: GENERAL**

A.  Religion is the only constitutionally protected inmate right that has been intentionally elevated by statute substantially beyond what the U.S. Supreme Court has ruled to be required.

B.  RLUIPA provides no government shall impose a **substantial burden** on the religious exercise of a person, residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on the person:

1.  is in furtherance of a **compelling government interest**; and
2.  is the **least restrictive means** of furthering that compelling governmental interest.

C.  RLUIPA's effect on the ability of CCJ to closely regulate inmates' exercise of religion is substantial. After the passage of the Religious Freedom Restoration Act of 1993 (RFRA), there was a great upsurge of frivolous inmate litigation demanding a wide variety of, and often, bizarre religious demands. There was also a large increase in the number of cases filed challenging even modest attempts to regulate inmate religious exercise and in the costs for defending those cases.

D.  To the relief of corrections administrators, in 1997, RFRA was ruled to be an unconstitutional exercise of congressional power by the U.S. Supreme Court.[5] Congress enacted RLUIPA as the second incarnation of RFRA to try to get past the Supreme Court's ruling and is the current law governing the CCJ policies unless and until it, too, is ruled to be unconstitutional.[6]

**CL 50/02.04  PROCEDURE: SUBSTANTIAL BURDEN**

A.  In enacting and implementing its policies and procedures, the CCJ must justify any regulation that imposes a **substantial burden** on inmates' free exercise of religion.

B.  Unlike the law under RFRA, it is not necessary that the religious practice be "central" to the inmate's belief or that the practice is "compelled" by a religious code.[7] Under RLUIPA, *religious exercise* is defined as "any exercise of religion whether or not compelled by, or central to, a system of religious belief."[8]

C.  *Substantial burden* means that the interference must be more than an inconvenience. "Substantial" is defined as something "actually existing;

---

[4]**Mayweathers v. Newland**, 314 F.3d 1062 (CA9 2002).
[5]**Boerne v. Flores**, 521 U.S. 507 (1997).
[6]The Supreme Court is yet to rule on RLUIPA; however, two different circuits of the U.S. Court of Appeals have ruled on the constitutionality of RLUIPA. The Ninth Circuit (the most reversed circuit court in the federal judiciary) has ruled RLUIPA to be constitutional, while the Sixth Circuit, in November, 2003, found it to be unconstitutional. Utah is in the Tenth Circuit which, though it has ruled on an RLUIPA case, did not address the issue of the constitutionality of the statute itself.
[7]**Kikumura v. Hurley**, No. 99-1284 (CA10 March 9, 2001).
[8]42 USC §2000cc-5(7)(A).

real; not seeming or imaginary; not illusive; solid; true; veritable."[9] Simple conclusory statements or claims by the inmate should not suffice.

    D.    Because there are dozens, if not hundreds, of possible claims which could be raised as *substantial burdens* on religious practices, every conceivable issue cannot be individually covered by policy. For resolving the less frequently raised issues, CCJ officials should apply the principles set forth in this chapter in their decision making.

## CL 50/02.05  PROCEDURE: COMPELLING NECESSITY

    A.    If the regulation in question does not substantially burden a religious practice, the issue ends. If, however, there is a substantial burden, it is necessary for CCJ officials to justify the regulation.

    B.    To justify substantially burdening an inmate's religious exercise, officials must demonstrate that the burden "is in furtherance of a compelling government interest."

        1.    A **compelling government interest** requires far more than the legitimate penological interest which is the ordinary standard for First Amendment claims. RLUIPA has the effect of elevating religious rights above other First Amendment rights.

        2.    Thus, "instead of a rational [standard], the penological interest under RLUIPA must be of the highest order[10] . . . instead of focusing on the prison inmate's ability to find other avenues to exercise his belief, a court is required to focus on the prison administrator's choice among regulatory options . . .instead of placing the burden of proof on the inmate, RLUIPA throws the burden on prison officials."[11]

        3.    This places a significant burden on the facility to justify its regulations relating to inmates' access to religion.

    C.    Religious practices which CCJ officials can demonstrate would have a significant potential for jeopardizing security, safety, or order will have the greatest chance of rising to a compelling governmental interest.

## CL 50/02.06  PROCEDURE:  LEAST RESTRICTIVE MEANS

    A.    If it is determined that there is a compelling governmental necessity, then the CCJ must demonstrate that the burden "is the least restrictive means of furthering that compelling governmental interest."

    B.    CCJ officials must consider alternative means of furthering the CCJ's intended interests, other than the restrictions to which the inmate objects. The alternate approach must impose a lesser burden on the inmate's religious rights, or CCJ officials should be prepared to defend the restriction level imposed by the regulation.

    C.    To determine the least restrictive alternative, officials should:

        1.    identify the compelling interests jeopardized by the religious practice;

---

[9]Black, Henry Campbell, *Black's Law Dictionary,* Special Deluxe Fifth Edition, West Publishing: St. Paul (1979).
[10]See **Wisconsin v. Yoder**, 406 U.S. 205, 215 (1972).
[11]**Madison v. Riter**, 240 F. Supp.2d 566 (W.D. Va. 2003).

    2.      determine what options or controls are available for allowing the inmate to enjoy the religious practice without destroying the CCJ's protected interests; and

    3.      after balancing the competing interests, select a means of meeting the CCJ's compelling needs in the least restrictive manner.

D.      The least restrictive means test is the most difficult aspect of complying with RLUIPA, and presents the greatest intrusion on administrative discretion.

E.      In the ensuing chapters of this sequence, the least restrictive means will be applied to individual chapters.

# CL 50/03.00 DISAGREEMENT RESOLUTION

## CL 50/03.01 POLICY

It is the policy of the CCJ to make all reasonable efforts to resolve disagreements regarding the CCJ's regulation of the exercise of religion.

## CL 50/03.02 RATIONALE

A.      The requirements of RLUIPA are not well charted, and a great number of issues have not been decided by the courts.

B.      Inmates must formally bring their complaints to CCJ officials for resolution before entering into RLUIPA litigation in federal courts.

## CL 50/03.03 PROCEDURE: INMATE COMPLAINTS

Inmates with complaints about the CCJ's regulation of religious exercise shall address those complaints and claims through the inmate grievance system.[12]

## CL 50/03.04 PROCEDURE: CLERGY COMPLAINTS

A.      Complaints from religious clergy about CCJ regulation of religious exercise shall be submitted in a letter or other written document to the Jail Lieutenant. The document should list each individual CCJ rule with which the person takes issue, and for each issue:

    1.      the religious tenet the rule restricts;

    2.      how the rule rises to a substantial burden, as opposed to a minimal burden or inconvenience;

    3.      why the rule prevents the inmate's religious needs from being adequately addressed; and

    4.      how the issue could be resolved without jeopardizing the CCJ's safety, security, order, discipline, and other legitimate penological interests.

B.      The Jail Lieutenant shall attempt to resolve the issues in a manner which balances the competing interests.

C.      If it appears there will be an impasse which cannot be resolved, the Jail Lieutenant should alert the Cache County Attorney's Office of the possibility of pending action under RLUIPA.

---

[12]CG 53, "Grievance: Exhaustion of Administrative Remedies."