# EXHIBIT I

| VOLUME: NUMBER – TOPIC           | CHAPTER: NUMBER – TOPIC              |                      |
|----------------------------------|--------------------------------------|----------------------|
| **CL Inmate Services**           | **CL 51**   **Religion: Access to Services** | |

| PUBLISHED | PREVIOUS REVIEW | SUPERSEDES | SCHEDULED REVIEW | PAGES |
|-----------|-----------------|------------|------------------|-------|
| **08/20/04** | **11-18** | **NA** | **3-20** | **5** |

| TO BE REVIEWED BY | APPROVED BY |
|---|---|
| **JAIL LIEUTENANT** | **Sheriff D. Chad Jensen** |

## TABLE OF CONTENTS

CL 51/01.00  **GENERAL PROVISIONS**
CL 51/01.01  Purpose of Chapter
CL 51 /01.02  Distribution
CL 51/01.03  Definitions
CL 51/01.04  Utah Jail Standards References

CL 51/02.00  **RELIGIOUS SERVICES REGULATIONS**
CL 51/02.01  Policy
CL 51/02.02  Rationale
CL 51/02.03  Procedure: Regulation of Services
CL 51/02.04  Procedure: Day and Time of Services
CL 51/02.05  Procedure: Location of Services
CL 51/02.06  Procedure: Access to Services
CL 51/02.07  Procedure: Congregate Services
CL 51/02.08  Procedure: Restrictions on Services
CL 51/02.09  Procedure: Religious Items Used at Services
CL 51/02.10  Procedure: Monitoring of Services

**CL 51/01.00 <u>GENERAL PROVISIONS</u>**

**CL 51/01.01 <u>PURPOSE OF CHAPTER</u>**
The purpose of this chapter is to provide the Cache County Jail's policies and procedures governing access to and regulation of religious services for inmates.

**CL 51/01.02 <u>DISTRIBUTION</u>**
In addition to the standard distribution, a copy of this chapter should be made available to each religious volunteer who serves in the Cache County Jail (CCJ). The policy should be accessible to the volunteers, but shall not be copied for use outside the CCJ.

**CL 51/01.03 <u>DEFINITIONS</u>**

| | |
|---|---|
| **CCJ** | Cache County Jail |
| **religious exercise** | "any exercise of religion, whether or not compelled by, or central to, a system of religious belief"[1] |
| **Religious Land Use and Institutionalized Persons Act of 2000** | an act passed by the U.S. Congress creating special religious rights for inmates; successor to the Religious Freedom Restoration Act of 1993 struck down by the U.S. Supreme Court as unconstitutional[2] |
| **RLUIPA** | Religious Land Use and Institutionalized Persons Act |
| **substantial** | something actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable[3] |

**CL 51/01.04 <u>UTAH JAIL STANDARDS REFERENCES</u>**
J 06.01.01   Written Access to Religion Policies and Procedures Required
J 06.01.02   Content: Access to Religion
J 06.02.01   Right to Free Exercise of Religion
J 06.02.02   Restricting Prisoners Free Exercise of Religion
J 06.03.01   Access to Free Exercise of Religion

**CL 51/02.00 <u>RELIGIOUS SERVICES REGULATIONS</u>**

**CL 51/02.01 <u>POLICY</u>**
It is the policy of the CCJ to:
A.   provide venues for religious services;
B.   permit access to religious services; and
C.   regulate the services in a manner that balances the CCJ's legitimate penological interests with the requirements of the RLUIPA and other legal requirements.

---

[1] 42 USC §2000cc-5(7)(A).
[2] **Boerne v. Flores**, 521 U.S. 507 (1997).
[3] Black, Henry Campbell, *Black's Law Dictionary,* Special Deluxe Fifth Edition, West Publishing: St. Paul (1979).

**CL 51/02.02**  **RATIONALE**
- A. Inmates have the right of access to religious services protected by the constitutions and laws of the United States and the State of Utah.
- B. The CCJ regulation of inmate visitation must also further the CCJ's legitimate penological interests, including, but not limited to safety, security, order, discipline, and, for convicted inmates, reducing recidivism.

**CL 51/02.03**  **PROCEDURE: REGULATION OF SERVICES**
- A. The CCJ should provide inmates a reasonable opportunity to participate in religious services during their incarceration.
- B. Access to religious services must, however, be accommodated within the limits imposed by the legitimate penological interests of the CCJ. Access to religious services cannot be permitted to seriously degrade or compromise:
  1. the safety of staff, inmates, or other persons in the CCJ;
  2. the security of the facility;
  3. order and discipline among the inmate population; or
  4. other legitimate penological interests.
- C. The CCJ should try to avoid substantially burdening inmates' access to religious services; however, when compelling governmental necessities result in substantial burdens, the CCJ should try to regulate access to services in the least restrictive means.

**CL 51/02.04**  **PROCEDURE: DAY AND TIME OF SERVICES**
- A. Sunday is the most common day requested by inmates for religious services. As a result, there will be a greater challenge scheduling and coordinating services.
- B. The Sabbath or holy day for some religions is on days other than Sunday (e.g., Friday for the Islamic faith and Saturday for the Jewish faith), and will require a different challenge of scheduling and coordinating the services with non-religious activities.
- C. The Programs Coordinator is responsible for receiving requests for religious services from inmates and the clergy, and creating a schedule which reasonably accommodates the needs of the CCJ population for religious services.
- D. The weekly religious services schedule should be provided to inmates by the Programs Coordinator.

**CL 51/02.06**  **PROCEDURE: ACCESS TO SERVICES**
- A. The CCJ should make every reasonable effort to allow inmates to have access to religious services; however, the CCJ will regulate access by time, location, and manner.
- B. The CCJ will regulate the manner in which religious services are provided, keeping in mind that allowing inmates to congregate out of their living areas for any purpose:
  1. increases the difficulty of controlling the inmates' actions;
  2. increases the possibility of trafficking in weapons, drugs, and other contraband;

      3.    allows gang members and members of other security threat groups to improperly use the opportunity to assemble to defeat security procedures and promote the improper, often illegal, agenda of the involved inmates; and

      4.    increases the demands on staff to maintain order, safety, and security.

### CL 51/02.07   PROCEDURE: CONGREGATE SERVICES

A. The CCJ recognizes that it is more effective and less burdensome to permit inmates to worship in groups; however, unrestricted access to congregate services would seriously undermine jail classification by:
 1. requiring movement of dangerous, combative inmates;
 2. allowing inmate gang members, threat groups, or other inmate affinity groups to attend religious services for the sole purpose of getting together for improper purposes; and
 3. bringing together in close proximity:
     a. vulnerable inmates with those who are predatory or dangerous;
     b. inmates with contagious disease with inmates who would potentially become infected;
     c. co-conspirators; and
     d. other inmates correctly separated by classification.

B. The CCJ should permit congregate services to be held; however, to further safety and security interests:
 1. unregulated grouping of inmates for religious services cannot be permitted because it would significantly undermine inmate classification;
 2. inmates should sign up for religious services in advance to permit CCJ deputies to compare lists to classification levels, separation orders,[4] and other information necessary to safely and securely group inmates;
 3. greater restrictions may be applied following inmate disturbances or when a greater threat level exists;[5]
 4. groups shall be limited to a maximum of 24 inmates per session;
 5. inmates will be pulled from religious services if they become disruptive, intimidate others, engage in other improper behavior, or simply are asked to be removed from the service by a volunteer; and
 6. any inmate who is removed from a religious service due to request of a volunteer will not be allowed to the religious service for the remainder of their incarceration.

### CL 51/02.08   PROCEDURE: RESTRICTIONS ON SERVICES

A. Religious services must be conducted in a manner that does not degrade or undermine CCJ safety, security, order, or discipline.

---

[4] See CG 26, "Classification Factors: Separation Orders."
[5] **Jenkins v. Angelone**, 948 F.Supp. 543 (E.D. Va. 1996).

    B.    If services become disorderly or appear to be in danger of escalating into riotous, violent, or disruptive actions, the service will be terminated, the inmates returned to their cell, and the meeting area closed and secured.

**CL 51/02.09**  **PROCEDURE: RELIGIOUS ITEMS USED AT SERVICES**

All items which will be used at religious services shall have prior approval from CCJ officials. Clergy shall not bring to the religious service any unapproved substance or other item.

**CL 51/02.10**  **PROCEDURE: MONITORING OF SERVICES**

    A.    Religious services conducted inside the CCJ must conform to all rules, regulations, policies, and procedures set forth to regulate that process. To ensure that religious services or the persons attending them are not out of compliance with these requirements, the CCJ will monitor religious services.

    B.    Work demands will not permit constant observation of services; however, CCJ staff will be required to make frequent, intermittent, and unscheduled checks on meeting areas.