# EXHIBIT J

| VOLUME: NUMBER – TOPIC | | | CHAPTER: NUMBER – TOPIC | | |
|---|---|---|---|---|---|
| **CL Inmate Services** | | | **CL 53** | **Religion: Reading Material** | |
| PUBLISHED | PREVIOUS REVIEW | SUPERSEDES | SCHEDULED REVIEW | | PAGES |
| **08/20/04** | **10-18** | **NA** | **3-20** | | **4** |
| TO BE REVIEWED BY | | | APPROVED BY | | |
| **JAIL LIEUTENANT** | | | **Sheriff D. Chad Jensen** | | |

## TABLE OF CONTENTS

CL 53/01.00   **GENERAL PROVISIONS**
CL 53/01.01   Purpose of Chapter
CL 53 /01.02   Distribution
CL 53/01.03   Definitions
CL 53/01.04   Utah Jail Standards References

CL 53/02.00   **READING MATERIAL REGULATIONS**
CL 53/02.01   Policy
CL 53/02.02   Rationale
CL 53/02.03   Procedure: Regulation of Written Material
CL 53/02.04   Procedure: Denying Written Material
CL 53/02.05   Procedure: Donated Material

## CL 53/01.00 GENERAL PROVISIONS

### CL 53/01.01 PURPOSE OF CHAPTER

The purpose of this chapter is to provide the Cache County Jail's policies and procedures governing access to written religious materials.

### CL 53/01.02 DISTRIBUTION

In addition to the standard distribution, a copy of this chapter should be made available to each religious volunteer who serves in the CCJ. The policy should be accessible to the volunteers, but shall not be copied for use outside the CCJ.

### CL 53/01.03 DEFINITIONS

| | |
|---|---|
| **CCJ** | Cache County Jail |
| **religious exercise** | "any exercise of religion whether or not compelled by, or central to, a system of religious belief"[1] |
| **Religious Land Use and Institutionalized Persons Act of 2000** | an act passed by the U.S. Congress creating special religious rights for inmates; successor to the Religious Freedom Restoration Act of 1993 struck down by the U.S. Supreme Court as unconstitutional[2] |
| **RLUIPA** | Religious Land Use and Institutionalized Persons Act |
| **substantial** | something actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable[3] |

### CL 53/01.04 UTAH JAIL STANDARDS REFERENCES

| | |
|---|---|
| J 06.01.01 | Written Access to Religion Policies and Procedures Required |
| J 06.01.02 | Content: Access to Religion |
| J 06.02.01 | Right to Free Exercise of Religion |
| J 06.02.02 | Restricting Prisoners Free Exercise of Religion |
| J 06.03.01 | Access to Free Exercise of Religion |

## CL 53/02.00 READING MATERIAL REGULATIONS

### CL 53/02.01 POLICY

It is the policy of the Cache County Jail (CCJ) to:
A. allow inmates to receive written religious materials so long as the materials do not create a substantial threat to safety, security, and order in the CCJ;
B. place donated religious books in the CCJ library; and

---

[1] 42 USC §2000cc-5(7)(A).
[2] **Boerne v. Flores**, 521 U.S. 507 (1997).
[3] Black, Henry Campbell, *Black's Law Dictionary,* Special Deluxe Fifth Edition, West Publishing: St. Paul (1979).

      C.    regulate access to written material in a manner that balances the CCJ's legitimate penological interests with the requirements of the RLUIPA and other legal requirements.

**CL 53/02.02** **RATIONALE**
- A. Inmates have a right of access to written religious materials protected by the constitutions and laws of the United States and the State of Utah.
- B. The CCJ regulation on written religious materials must also further the CCJ's legitimate penological interests, including, but not limited to, safety, security, order, discipline, and, for convicted inmates, reducing relapse.

**CL 53/02.03** **PROCEDURE: REGULATION OF WRITTEN MATERIAL**
- A. The CCJ should allow inmates to receive written religious materials during their incarceration.
- B. If religious books come from a publisher or book store, they must go through a shipping service, i.e. UPS, FedEx, USPS, and no hard back books are allowed in the CCJ.
- C. As with non-religious mail, the screening of such materials to determine whether they will be permitted must be content neutral.[4] Rejections of material must rely on explaining the threat to the CCJ if the materials are admitted.

**CL 53/02.04** **PROCEDURE: DENYING WRITTEN MATERIAL**
- A. Under RLUIPA, the burden is on the CCJ to justify denying written materials.
- B. Inmates are very resourceful and often use religion and the protections of RLUIPA to find ways to threaten safety and security through the introduction of written materials. Religions which espouse racial supremacy and hate groups disguised as religions send highly inflammatory "religious" materials to inmates.
- C. Courts have overturned decisions to deny materials to inmates if corrections officials cannot demonstrate a sufficient threat to penological interests.
- D. Courts have upheld denying such materials if it is reasonable to believe they could anger inmates or lead them to violence or other unlawful action.[5]
- E. If CCJ officials deny access to written religious material, the decision may be challenged:
  1. by the inmate by filing a grievance; and
  2. by the sender by complaining in writing directly to the Jail Lieutenant.

---

[4]**Thornburgh v. Abbott**, 490 U.S. 401, 408 (1989).
[5]**Knuckles v. Prasse**, 302 F.Supp. 1036 (E.D. Pa. 1969), *aff'd,* 435 F.2d 1255 (CA3 1970), *cert. denied,* 403 U.S. 936 (1971) (upholding denying *Muhammad Speaks*, a Black Muslim publication featuring highly inflammatory anti-white rhetoric); **George v. Sullivan**, 896 F.Supp. 895 (W.D. Wisc. 1995) (inflammatory white supremacists materials from the Church of Jesus Christ Christian); **Lawson v. Dugger**, 844 F.Supp.1056 (S.D. Fla. 1994) (Black Hebrew Israelite publications which depicted whites mutilating and murdering blacks).

**CL 53/02.05** **<u>PROCEDURE: DONATED MATERIAL</u>**

The CCJ will accept religious materials such as Bibles, Books of Mormon, the Koran, and other religious publications if received directly from the publisher for donation.