# EXHIBIT K

Case 4:18-cv-00081-DN   Document 119-11   Filed 12/14/21   PageID.2025   Page 1 of 5

| VOLUME: NUMBER – TOPIC | CHAPTER: NUMBER – TOPIC | | | |
|---|---|---|---|---|
| **CL Inmate Services** | **CL 54**      **Religion: Diets** | | | |
| PUBLISHED | PREVIOUS REVIEW | SUPERSEDES | SCHEDULED REVIEW | PAGES |
| **10/01/04** | **10-18** | **NA** | **3-20** | **4** |
| TO BE REVIEWED BY | APPROVED BY | | | |
| **JAIL LIEUTENANT** | **Sheriff D. Chad Jensen** | | | |

## TABLE OF CONTENTS

CL 54/01.00    **GENERAL PROVISIONS**
CL 54/01.01    Purpose of Chapter
CL 54/01.02    Distribution
CL 54/01.03    Definitions
CL 54/01.04    Utah Jail Standards References

CL 54/02.00    **RELIGIOUS DIET REGULATIONS**
CL 54/02.01    Policy
CL 54/02.02    Rationale
CL 54/02.03    Procedure: Regulation of Diets
CL 54/02.04    Procedure: Requesting and Providing Religious Meals
CL 54/02.05    Procedure: Inmate Challenges

## CL 54/01.00 GENERAL PROVISIONS

### CL 54/01.01 PURPOSE OF CHAPTER

The purpose of this chapter is to provide the Cache County Jail's policies and procedures governing religious diet requests.

### CL 54/01.02 DISTRIBUTION

In addition to the standard distribution, a copy of this chapter should be made available to each religious volunteer who serves in the Cache County Jail (CCJ). The policy should be accessible to the volunteers, but shall not be copied for use outside the CCJ.

### CL 54/01.03 DEFINITIONS

**CCJ** — Cache County Jail

**religious exercise** — "any exercise of religion whether or not compelled by, or central to, a system of religious belief"[1]

**Religious Land Use and Institutionalized Persons Act of 2000** — an act passed by the U.S. Congress creating special religious rights for inmates; successor to the Religious Freedom Restoration Act of 1993 struck down by the U.S. Supreme Court as unconstitutional[2]

**RLUIPA** — Religious Land Use and Institutionalized Persons Act

**substantial** — something actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable[3]

### CL 54/01.04 UTAH JAIL STANDARDS REFERENCES

| | |
|---|---|
| J 06.01.01 | Written Access to Religion Policies and Procedures Required |
| J 06.01.02 | Content: Access to Religion |
| J 06.02.01 | Right to Free Exercise of Religion |
| J 06.02.02 | Restricting Prisoners Free Exercise of Religion |
| J 06.03.01 | Access to Free Exercise of Religion |

## CL 54/02.00 RELIGIOUS DIET REGULATIONS

### CL 54/02.01 POLICY

It is the policy of the Cache County Jail (CCJ):
A.  to consider inmates' requests to be served religious diets;
B.  if approved, to serve a diet which provides adequate nutrition without violating religious diet requirements; and

---

[1] 42 USC §2000cc-5(7)(A).
[2] **Boerne v. Flores**, 521 U.S. 507 (1997).
[3] Black, Henry Campbell, *Black's Law Dictionary,* Special Deluxe Fifth Edition, West Publishing: St. Paul (1979).

      C.    to handle requests for religious diets in a manner that balances the CCJ's legitimate penological interests with the requirements of the RLUIPA and other legal requirements.

## CL 54/02.02 RATIONALE

      A.    Inmates are entitled by the constitutions and laws of the United States and the State of Utah to reasonable accommodation in being provided diets which do not require them to eat foods of which they are forbidden to partake due to religious tenets.

      B.    The CCJ consideration of inmates' religious diet requests must also balance those requests against the CCJ's legitimate penological interests, including but not limited to safety, security, order, and discipline.[4]

## CL 54/02.03 PROCEDURE: REGULATION OF DIETS

      A.    The CCJ should allow inmates to make requests for special religious diets. Requests will be evaluated to try to determine which diet requests are shams[5] and which are legitimate.

          1.    When diet requests are obviously fraudulent or insincere, evaluating requests is relatively simple.[6]

          2.    Under RLUIPA, the burden is on the CCJ to justify denying religious diet requests. A large body of litigation has recognized the diet needs of inmates who belong to the Jewish,[7] Islamic,[8] and Hindu religions; however, for other religions, diet needs are often less clear.

      B.    The CCJ will try to avoid substantially burdening inmates' access to free exercise of religion in matters of diet; however, when compelling governmental necessities result in a substantial burden, the CCJ will try to regulate access to services in the least restrictive means

## CL 54/02.04 PROCEDURE: REQUESTING AND PROVIDING RELIGIOUS MEALS

      A.    Inmates can request special religious diets by completing an inmate request form with "Religious Diet Request" at the top and submitting it to the CCJ for approval.

      B.    The request should be approved if:

---

[4] For example, granting a religious diet request for porterhouse lobster, caviar, and tequila would provide obvious safety and security problems, and granting the outlandish demands for luxury meals would have a profound effect on the other inmates in the facility.

[5] **Luckette v. Lewis**, 883 F.Supp. 471 (D. Ariz. 1995) (The court said Arizona officials could inquire into the prisoner's religious beliefs to permit officials to determine whether the religious requests are legitimate or a sham, without judging the merits of the religion.).

[6] **Rust v. Clarke**, 883 F.Supp. 1293 (D.Neb. 1995) (A Nebraska federal court upheld the refusal of prison officials to provide nine different kinds of meat, including goat and horse. The inmates had also demanded to have spears, swords, and individual drinking horns.).

[7] **Jackson v. Mann**, 196 F.3d 316 (CA2 1999); **Johnson v. Horn**, 150 F.3d 276 (CA 3 1998); **Ashelman v. Wawrzaszek**, 111 F.3d 674 (9th Cir. 1997); **Ward v. Walsh**, 1 F.3d 873 (CA9 1993); **Kahey v. Jones**, 836 F.2d 948 (CA5 1988).

[8] **Johnson v. Horn**, 150 F.3d 276 (3rd Cir. 1998); **Muhammad v. Warithu-Deen Umar**, 98 F. Supp. 2d 337 (W.D.N.Y. 2000).

        1. the diet requirements are already well established;
        2. the inmate is a member of a faith, declares that faith during the booking process, and requires the diet, or is currently considering joining or investigating that faith; and
        3. CCJ officials cannot establish a compelling governmental interest justifying the refusal of the request.
   C. If the CCJ approves the diet request, he shall provide the Food Services manager written instructions regarding the diet approval.
        1. The Food Services manager should receive written notice that the inmate's diet request was approved and is effective at the next meal.
        2. The notice should include the inmate's name, cell location, religious affiliation, and a list of the food items which the inmate should not be served.
        3. The inmate will not be permitted to determine exactly what his diet should be; rather, he must identify the offending foods, and his diet will then be developed without including those items. For example, pork and pork byproducts would be eliminated from the diet of Jewish and Muslim inmates.
        4. The Food Services manager shall be instructed to develop a one-week diet plan which provides meals which do not include the prohibited food items. The menu will be repeated each week.

**CL 54/02.05** **PROCEDURE: INMATE CHALLENGES**
   A. The religious diet need only be an element of the inmate's religious practice, it does not have to be "compelled by, or central to, a system of belief."[9] Thus, under RLUIPA, denying an inmate a religious diet will require substantial justification.
   B. If the inmate's request for a special religious diet is denied, or he is unsatisfied with the special diet that was approved, he can challenge the decision by filing a grievance.

---

[9] 42 U.S.C. § 2000cc-5(7)(A). Also see **Kikumura v. Hurley**, No. 99-1284 (CA10 March 9, 2001).