# EXHIBIT L

Case 4:18-cv-00081-DN   Document 119-12   Filed 12/14/21   PageID.2030   Page 1 of 5

| VOLUME: NUMBER – TOPIC<br>**CL Inmate Services** | | | CHAPTER: NUMBER – TOPIC<br>**CL 55      Religion: Jewelry and Articles** | |
|---|---|---|---|---|
| PUBLISHED<br>**08/20/04** | PREVIOUS REVIEW<br>**8-18** | SUPERSEDES<br>**NA** | SCHEDULED REVIEW<br>**11-19** | PAGES<br>**4** |
| TO BE REVIEWED BY<br>**JAIL LIEUTENANT** | | | APPROVED BY<br>**Sheriff D. Chad Jensen** | |

## TABLE OF CONTENTS

CL 55/01.00   **GENERAL PROVISIONS**
CL 55/01.01   Purpose of Chapter
CL 55/01.02   Distribution
CL 55/01.03   Definitions
CL 55/01.04   Utah Jail Standards References

CL 55/02.00   **REGULATING POSSESSION OF RELIGIOUS ARTICLES**
CL 55/02.01   Policy
CL 55/02.02   Rationale
CL 55/02.03   Procedure: Regulation of Religious Items
CL 55/02.04   Procedure: Requests for Religious Items
CL 55/02.05   Procedure: Inmate Challenges

## CL 55/01.00 GENERAL PROVISIONS

### CL 55/01.01 PURPOSE OF CHAPTER

The purpose of this chapter is to provide the Cache County Jail's policies and procedures governing religious jewelry and other religious items.

### CL 55/01.02 DISTRIBUTION

In addition to the standard distribution, a copy of this chapter should be made available to each religious volunteer who serves in the Cache County Jail (CCJ). The policy should be accessible to the volunteers, but shall not be copied for use outside the CCJ.

### CL 55/01.03 DEFINITIONS

**CCJ**    Cache County Jail

**religious exercise**    "any exercise of religion whether or not compelled by, or central to, a system of religious belief"[1]

**Religious Land Use and Institutionalized Persons Act of 2000**    an act passed by the U.S. Congress creating special religious rights for inmates; successor to the Religious Freedom Restoration Act of 1993 struck down by the U.S. Supreme Court as unconstitutional[2]

**RFRA**    Religious Freedom Restoration Act of 1993

**RLUIPA**    Religious Land Use and Institutionalized Persons Act

**substantial**    something actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable[3]

### CL 55/01.04 UTAH JAIL STANDARDS REFERENCES

J 06.01.01    Written Access to Religion Policies and Procedures Required
J 06.01.02    Content: Access to Religion
J 06.02.01    Right to Free Exercise of Religion
J 06.02.02    Restricting Prisoners Free Exercise of Religion
J 06.03.01    Access to Free Exercise of Religion

## CL 55/02.00 REGULATING POSSESSION OF RELIGIOUS ARTICLES

### CL 55/02.01 POLICY

It is the policy of the CCJ to:
A.    regulate and restrict the items which inmates can keep in their cells; and

---

[1] 42 USC §2000cc-5(7)(A).
[2] **Boerne v. Flores**, 521 U.S. 507 (1997).
[3] Black, Henry Campbell, *Black's Law Dictionary,* Special Deluxe Fifth Edition, West Publishing: St. Paul (1979).

    B.    regulate inmate property control in a manner that balances the CCJ's legitimate penological interests with the requirements of the RLUIPA and other legal requirements.

### CL 55/02.02 RATIONALE

The CCJ regulation of religious jewelry and other items is a necessary function of incarceration which furthers the CCJ's legitimate penological interests, including, but not limited to safety, security, order, and discipline.

### CL 55/02.03 PROCEDURE: REGULATION OF RELIGIOUS ITEMS

  A.  **General**
1. Although religious items are important to many inmates, such items can have a negative effect on CCJ interests. It is, thus, necessary to regulate and restrict possession of such items.
2. Under RLUIPA, the burden is on the CCJ to justify denying or limiting access to religious items.
3. The CCJ should avoid substantially burdening inmates' access to religious items; however, when compelling governmental necessities result in a substantial burden, the CCJ will try to regulate access to services in the least restrictive means.
4. Religious jewelry and other items can degrade and seriously compromise security in the CCJ. There are many problems caused by allowing possession of these items; however, the four main concerns include:
   a. use as weapons or tools;
   b. hiding or disguising drugs and other contraband;
   c. gang identification; and
   d. encouraging theft.

  B.  **Use as Weapons or Tools**
1. Some religious items make very good weapons or can be converted to weapons. For example:
   a. Some corrections facilities in the U.S. have had problems with a large, metal, crescent-shaped religious symbol worn on a chain or cord around the neck by Muslim inmates, and others have turned down Sikh inmates who insisted on having ceremonial dirks (knives) at religious services.
   b. Inmates have demanded religious items such as spears, swords, and drinking horns.[4]
2. Religious items can also be used as tools. For example, inmates have used crucifixes and other metal medallions as screw drivers to remove screws and have used the metal ornaments to carve words into the walls, furniture, and other facility property.

  C.  **Use to Introduce Drugs or Controlled Substances**
1. There is virtually nothing an inmate cannot use to smuggle drugs. Any container will do, regardless of size.
2. Religious items can also be used to disguise controlled substances. For example, the herbs, grasses, pollen, sage, tobacco, and other such substances which are used in Native American ceremonies or put inside sacred medicine bags can be used to disguise controlled

---

[4] **Rust v. Clarke**, 883 F.Supp. 1293 (D. Neb. 1995).

        substances. Thus, such items can be restricted with sufficient justification.[5]

    D.    **Increases Incentive for Theft**
Certain religious items (e.g., jewelry, clothing) may be desired by other inmates, creating an incentive for theft. Theft of religious items may arouse greater negative emotion than ordinary thefts, increasing the possibility of inmate-on-inmate violence.

    E.    **Gang Identification**
Inmates in some corrections facilities have identified as religious items clothing, hats,[6] handkerchiefs,[7] beads,[8] and other distinctive items. Generally, it is the color of the item which is most important to serve as a visual gang-recognition device.

**CL 55/02.04**   **PROCEDURE: REQUESTS FOR RELIGIOUS ITEMS**
    A.    If an inmate wants to be authorized to have a religious item in his cell or on his person, he shall make his request in writing to the Jail Lieutenant.
    B.    The request shall include:
        1.    the inmate's name and housing location;
        2.    the date and time;
        3.    the item or items requested; and
        4.    a complete explanation of the basis for the claim that the items are religious items protected by RLUIPA.
    C.    The Jail Lieutenant will decide whether the inmate will be permitted to possess the item. He will also list any conditions that may be applicable (e.g., inmate may only possess the item at a religious ceremony or item must be kept in inmate's cell).

**CL 55/02.05**   **PROCEDURE: INMATE CHALLENGES**
    A.    Under RLUIPA, denying an inmate's requested religious items will likely be considered to be a substantial burden. Justification will require a compelling necessity and the least restrictive means of implementing the restriction.
    B.    If the inmate's request for religious items is denied, he can challenge the decision by filing a grievance.

---

[5] **Hamilton v. Schriro**, 74 F.3d 1545 (CA8 1996).

[6] In an Arizona facility, Harley Davidson ball caps were claimed by inmate members of the white supremacist Aryan Brotherhood gang as a religious symbol.

[7] Handkerchiefs of certain colors worn in certain ways have served to identify various inmate gangs.

[8] **Campos v. Coughlin**, 854 F.Supp. 194 (S.D. N.Y. 1995) (In a case brought under RFRA, the court agreed the state had a compelling safety/security interest in preventing colored beads to be used to control gang activities, but ruled that a total ban on multicolored beads would not be the least restrictive alternative.); **Alameen v. Coughlin**, 892 F.Supp. 440 (E.D. N.Y. 1995).