THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| VIVEK LAKHUMNA,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>SGT. MESSINGER et al.,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION<br>& ORDER GRANTING<br>CACHE COUNTY DEFENDANTS'<br>SUMMARY-JUDGMENT MOTION**<br><br>Case No. 4:18-CV-81 DN<br><br>District Judge David Nuffer |

The parties are currently litigating Plaintiff's verified fifth amended civil-rights complaint (FAC), 42 U.S.C.S. § 1983 (2022). (ECF No. 38.) Two sets of defendants remain, from two different correctional facilities, each with a summary-judgment motion pending. (ECF Nos. 100, 120.) This Order grants the summary-judgment motion filed by Cache County Defendants (CCD) Sgt. Mark Maughan (religious services), Lt. Doyle Peck (jail commander), and Philip Yahne (property officer). (ECF No. 120.)

Plaintiff asserts CCD violated Plaintiff's First Amendment rights to free exercise of his Hindu religion. (ECF No. 38, at 19.) Specifically, he alleges CCD denied his requests for religious access--e.g., dietary requirements and possession of religious items. (*Id.*) And, (2) violation of Plaintiff's Fourteenth Amendment rights to due process and equal protection. (*Id.* at 20.) Here, Plaintiff flatly says these rights were violated by "All [28] Defendants listed in this complaint," but does not affirmatively link specific facts to CCD. (*Id.*)

CCD now move for summary judgment, on three alternative grounds: (a) their affirmative defense of Plaintiff's failure to exhaust his administrative remedies in Cache County

Jail's (CCJ's) grievance process; (b) Plaintiff's failure to state a claim upon which relief may be granted; or (c) the protection of their affirmative defense of qualified immunity. (ECF No. 120, at 6, 9, 21.) Defendants' motion relies on the following evidence: affidavits, jail policies, and copies of jail records. (ECF Nos. 119, 120.) Meanwhile, Plaintiff's relevant evidentiary support for this summary-judgment motion stems from the verified allegations of the FAC, to which he attached copies of inmate request and grievance forms, and the exhibits to his Memorandum in Opposition to Motion for Summary Judgment, including handwritten lists of "food criteria," "scriptural references," and "quotes"; and, articles appearing to be from magazines or newsletters. (ECF Nos. 38, 38-2, 38-3, 38-4, 38-5, 38-6, 38-7, 124, 124-1.)

Having thoroughly reviewed all relevant documents, containing the parties' arguments and evidentiary exhibits, the Court grants CCD's summary-judgment motion on the sole dispositive ground of Plaintiff's failure to exhaust his administrative remedies.

## I. SUMMARY-JUDGMENT STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). The Court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

"Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted).

"Those specific facts must be supported by particular parts of materials in the record; relying on mere pleadings is insufficient." *Id.* (citation and internal quotation marks omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self*, 439 F.3d at 1230 (internal quotation marks omitted.).

## II. UNDISPUTED MATERIAL FACTS

1. "Plaintiff is a practicing Hindu." (ECF No. 38, at 17.)

2. On June 7, 2018, Plaintiff arrived at Cache County Jail (CCJ). (Peck Decl., ECF No. 119-14, at 4.)

3. At the relevant time, Defendant Maughan was a CCJ sergeant, whose work responsibilities included "religious rights" and "property room supervision." (ECF No. 38, at 3; Maughan Decl., ECF No. 119-15, at 4.)

4. At the relevant time, Defendant Peck was CCJ commander, "responsible for day-to-day jail operations which included acting as a level of review in the grievance appeals process." (ECF No. 38, at 3; 119-14, at 5.)

5. At the relevant time, Defendant Yahne was a CCJ property deputy. (ECF No. 38, at 4-5; Yahne Decl., ECF No. 119-16, at 2.)

6. CCJ has a three-level grievance process, which "is designed to be completed within 32 calendar days if all steps run their full course." (ECF No. 119-3, at 5.) "Time limits include: 1. seven days from the precipitating event for the inmate to file a grievance; 2. seven days to complete the staff response at level one; 3. three days for the inmate to request a review by the Grievance Sergeant after receiving the written level one decision." (*Id.* at 6.) Grievances are to be written and "explain the reasons for and nature of [each] grievance." (*Id.* at 5.) Out of the five

available boxes to check on each "Inmate Request and Grievance Form" (IRGF), including, "Request," "Good Time," "Grievance," "Grievance Appeal," and "Other," an inmate must check the grievance box on the [IRGF] in order for it to be processed as a grievance." (*Id.* at 8.) "If a[n IRGF] is not specifically marked as a grievance, then it is not handled as a grievance." (ECF No. 119-14, at 4.) "The grievance policy was available to all inmates and addresses all types of potential harm." (*Id.* at 4.) "The [grievance] policy is provided in the Inmate Handbook, which is given to each inmate at booking and/or is also available in each inmate cell block area." (ECF No. 119-15, at 3.) "Inmates with complaints about the CCJ's regulation of religious exercise shall address those complaints and claims through the inmate grievance system." (ECF No. 119-8, at 6.) "If the inmate's request for a special religious diet is denied, or he is unsatisfied with the special diet that was provided, he can challenge the decision by filing a grievance." (ECF No. 119-11, at 5.) "If the inmate's request for religious items is denied, he can challenge the decision by filing a grievance." (ECF No. 119-12, at 5.)

7. In June 2018, as to Defendant Maughan, Plaintiff stated, "at intake, Plaintiff requested his prayer beads be returned to him," but "was told that his prayer beads posed a security risk to the [CCJ]." (ECF No. 38, at 3-4.) "Plaintiff also requested religious meals adhering to the Hindu religion, and feast/fast meals for the various religious observances," but was "told to self-select food items from the tray to meet his religious dietary requirements." (*Id.* at 4.)

Also in June 2018, Plaintiff asked that Defendant "Peck authorize the return of Plaintiff's prayer beads, that were taken from Plaintiff at booking"; and allow him to "set-up a prayer altar," but "Peck denied Plaintiff's . . . requests based on security issues." (ECF No. 38, at 3.)

Also in June 2018, as to Defendant Yahne, Plaintiff alleged, "Plaintiff was denied access to his own religious books, in his property," but was "directed to use the library, provided by the facility," though "the library contained no books on Hinduism." (ECF No. 38, at 5.)

8. On June 13, 2018, Plaintiff submitted an IRGF, checking the "Grievance" box, and "Describ[ing] Problem or Request," as follows:

> I am a Hindu and wrote to Sgt. Maughan for religious access. He has denied me religious access, which the Federal courts have decided is my civil rights. Draper gave me religious access which this county is now denied. I am a state inmate not county. Level 1. . . . I have contacted Sgt. Maughan regarding my religious food needs, prayer beads and altar. I have been denied religious access, which Draper honored. I am a state inmate not county. I will file a Federal 1983 for religious access denied.

(ECF No. 119-13, at 4.)

9. On June 14, 2018, "JP" responded to Plaintiff's June 13th level-one grievance, stating, "The beads + altar are the only things denied. These are denied for any religion (i.e., Catholic rosaries) and that policy has been challenged and remains. Sgt. Maughan requested more information about the rest of the requests so those things are not denied." (ECF No. 119-13, at 4.)

10. On July 5, 2018, Plaintiff submitted an IRGF, checking the "Grievance" box, and "Describ[ing] Problem or Request," as follows:

> I started to receive partial vegetarian meals on 6/26/18. The meals do not adhere to the Hindu faith. The meals are not made in a separate kitchen[;] no prayers are said[;] no mantras are said, etc. Sgt. Maughan has denied me feast/fast boxes for my religious observances. Deputy Yahne has denied me my religious books in property, as well as my religious correspondence course. Draper prison provides all the above mentioned religious items. Level I. . . . I have contacted Mr. Toone, Sgt. Maughan and Deputy Yahne. I want the same access to religion that Draper provides. Religious access has nothing to do with safety + security. Draper provides religious access.

(ECF Nos. 38-5, at 2; 119-13, at 19.)

11. On July 8, 2018, CCJ's response to Plaintiff's July 5th level-one grievance stated:

> According to the Religious Land Use and Institutionalized Persons
> Act (RLUIPA) the burden to determine whether or not religious
> items & diets are permitted lies on the facility housing you. The
> CCJ at this time finds your request(s) a "substantial burden." We
> cannot prepare your meals in a separate kitchen due to the
> difficulty & cost of the request. Religious books, artifacts and other
> items can and have been used to introduce contraband and
> fashioned into tools and weapons.

(ECF Nos. 38-5, at 2; 119-13, at 19.)

12. On July 19, 2018, Plaintiff left CCJ. (ECF No. 119-14, at 4.)

### III. ADMINISTRATIVE-EXHAUSTION STANDARDS

In enacting the Prison Litigation Reform Act of 1995 (PLRA), Congress "impos[ed] a

strict administrative-exhaustion requirement . . . [on] civil-rights claims filed by prisoners."

*Pakdel v. City and Cnty. of San Francisco*, 141 S. Ct. 2226, 2231 (2021) (per curiam) (citing 42

U.S.C.S. § 1997e(a) (2022)). That section states, "No action shall be brought with respect to

prison conditions under [42 U.S.C.S. § 1983 (2022)], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted." 42 U.S.C.S. § 1997e(a) (2022). The Supreme Court has often

emphasized, "[T]hat language is 'mandatory.'" *Ross v. Blake*, 578 U.S. 632, 638 (2016) ("An

inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

exhaustion of available administrative remedies.") (citing *Woodford v. Ngo*, 548 U.S. 81, 85

(2006) ("Exhaustion is no longer left to the discretion of the district court.")); *Gray v. Sorrels*,

818 F. App'x 787, 791 (10th Cir. 2020) (unpublished) ("[T]he district court is not authorized to

dispense with [the statutory exhaustion requirement]."). "There is no question that . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("All agree that no unexhausted claim may be considered."). Indeed, PLRA "requires compliance with 'deadlines and other critical procedural rules,' *Woodford*, 548 U.S. at 90-91, with no exceptions for 'special circumstances.'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022); *see Ross*, 578 U.S. at 639 ("PLRA's text suggests no limits on an inmate's obligation to exhaust--irrespective of any 'special circumstances.'"); *Miller v. French*, 530 U.S. 327, 337 (2000) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."); *see also McNeil v. United States*, 508 U.S. 106, 111 (1993) (stating "we are not free to rewrite the statutory text" when Congress has strictly barred "claimants from bringing suit in federal court until they have exhausted their administrative remedies").

The Supreme Court has held that the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90. "Proper exhaustion" intends use of "'all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Indeed, the "rules are defined not by PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218; *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." (Citation omitted.)). The Supreme Court concedes this requirement will stymie some prisoner cases, but observes that a "centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision, § 1997e(a)." *Woodford*, 548 U.S. at 84, 103 (quoting

*Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also id.* at 103 (responding to argument "that requiring proper exhaustion is harsh for prisoners, who generally are untrained in the law and are often poorly educated," Supreme Court notes "that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements").

An inmate's failure to exhaust is an affirmative defense, *Jones,* 549 U.S. at 216, and the burden is on the defendant to prove the failure to exhaust, *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). But, "[w]hen a defendant has established that an inmate did not exhaust his or her administrative remedies, the burden then shifts to the plaintiff to establish the grievance process was unavailable." *May*, 929 F.3d at 1234.

Indeed, "PLRA contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Section 1997e(a)'s exhaustion requirement depends on an administrative remedy's availability. *See id.* As explained by the Supreme Court, that means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court further identified three situations "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. Those are: (1) "[W]hen (despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (2) "[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"--i.e., "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644 (stating "[w]hen an administrative process is

susceptible of multiple reasonable interpretations, Congress has determined that the inmate

should err on the side of exhaustion"). And, (3) "when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or

intimidation." *Id.*

## IV. EXHAUSTION ANALYSIS

With this backdrop of law and facts, the Court concludes that it is undisputed that CCJ

has a "three-level . . . grievance system." (ECF No. 119-3, at 5.) So, general principles dictate

that Plaintiff was required to complete all three levels, as available, before bringing this federal

civil-rights action.

The evidence shows, though, that Plaintiff filed only two relevant level-one grievances at

CCJ: On June 13, 2018, Plaintiff submitted an IRGF, upon which he checked the box,

"Grievance," (ECF No. 119-13, at 4.) And, on July 5, 2018, Plaintiff submitted an IRGF, upon

which he checked the box, "Grievance." (ECF Nos. 38-5, at 2; 119-13, at 19.) However, there is

no record of him filing relevant level-two or level-three grievances; for instance, he never filed a

relevant IRGF, upon which he checked the box, "Grievance Appeal."

Plaintiff offers no arguments or evidence to contest the evidence showing that he did not

exhaust the CCJ grievance process. So, CCD has met their burden of showing Plaintiff's failure

to exhaust administrative remedies. That shifts the burden to Plaintiff, who argues the grievance

process was unavailable to him (with his allegations possibly fitting under only the first of the

three scenarios identified by the Supreme Court--"when (despite what regulations or guidance

materials may promise) [the administrative procedure] operates as a simple dead end--with

officers unable or consistently unwilling to provide any relief to aggrieved inmates.") *See Ross*, 578 U.S. at 644.

Plaintiff essentially argues the grievance process became unavailable to him because each of his level-one grievances was denied, which made it clear to him that he would not receive the relief requested--so there was no reason to appeal, or file level-two or -three grievances. (Pl.'s *Martinez* report resp., ECF No. 123, at 1.) Meanwhile, the first level-one grievance response Plaintiff received, stated, "The beads + altar are the only things denied. These are denied for any religion (i.e., Catholic rosaries) and that policy has been challenged and remains. Sgt. Maughan requested more information about the rest of the requests so those things are not denied." (ECF No. 119-13, at 4.) While the second level-one grievance response Plaintiff received stated,

> According to the Religious Land Use and Institutionalized Persons Act (RLUIPA) the burden to determine whether or not religious items & diets are permitted lies on the facility housing you. The CCJ at this time finds your request(s) a "substantial burden." We cannot prepare your meals in a separate kitchen due to the difficulty & cost of the request. Religious books, artifacts and other items can and have been used to introduce contraband and fashioned into tools and weapons.

(ECF Nos. 38-5, at 2; 119-13, at 19.)

Plaintiff argues that these responses caused him to feel that the CCJ grievance process was an "entirely fruitless exercise [with] no form of relief . . . available at all," so he "need[ed] not engage" further. (ECF No. 123, at 2.) He asserts that he did not "neglect to file a level three grievance," but chose not to file grievance appeals because, once he received the level-one response that his requests "were a 'substantial burden,'" he determined that he had "received all the relief that was available to him." (*Id.* at 3.) He cites a Ninth Circuit case to say that "Once an agency has . . . explained that no other relief is available, 'the administrative process has not been

obstructed. It has been exhausted.'" (*Id.* at 2 (quoting *Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002)).) But CCJ's grievance responses did not specify "that no other relief is available"; quite the opposite, the first grievance response even pointed out that more information was sought "about the rest of the requests so those things are not denied." (ECF No. 119-13, at 4.) In other words, CCJ expressed an attitude of wait-and-see in which their responses could change as more information came in.

Plaintiff also cites *Booth*, 532 U.S. at 731, and *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), to support his arguments.

In *Booth*, the issue was whether the exhaustion requirement hinged on the type of remedy available within the administrative process. 532 U.S. at 733. The *Booth* inmate sought monetary damages, yet the grievance process available was not capable of awarding monetary damages. *Id.* at 734. Despite that incapability, the Supreme Court held that "an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." *Id.* at 734. Though *Booth* is not completely on point, its holding actually cuts against Plaintiff's argument. The *Booth* inmate was required to keep raising his request for monetary relief at each level of the grievance process provided, even though the grievance process was set up from the beginning to eschew monetary relief--the very thing the inmate was seeking. It makes sense then that--even though Plaintiff may have believed CCJ's grievance process was set up from the beginning to reject his (nonmonetary) requests for religious accommodations--he was required to seek relief at each of the three levels of CCJ's grievance process. *Booth* supports this, despite Plaintiff's attempts to use *Booth* to the contrary.

Next, in *Ross* (also cited by Plaintiff), the Tenth Circuit stated that "once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." 365 F.3d at 1187. *Ross* says, "Prisoners are not required to file additional complaints or appeal *favorable* decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete." *Id.* (emphasis added) (citing *Gomez v. Winslow*, 177 F. Supp. 2d 977, 985 (N.D. Cal. 2001) ("Because [the plaintiff] had, in essence, 'won' his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is allowed to file suit.") (alteration in original)).

So *Ross* is inapposite here, where Plaintiff is seeking to be excused from appealing *unfavorable* decisions. For instance, in CCJ's response to Plaintiff's June 13, 2018 grievance in which he sought "religious food[]," "prayer beads and altar," Plaintiff was denied the prayer beads and altar, while "more information" was sought "about the rest of [Plaintiff's] requests." (ECF No. 119-13, at 4.) And, in CCJ's response to Plaintiff's July 5, 2018 grievance--in which he complained that (a) his "partial vegetarian meals . . . do not adhere to the Hindu faith" in specific ways, (b) "feast/fast boxes" were denied, and (c) "religious books [and] correspondence courses" were "denied"--Plaintiff was *refused* all relief he requested. Under *Ross*, then, Plaintiff was not excused from raising these grievance denials in level-two and -three grievances.

In short, the exhaustion requirement's relentless applicability to all inmates filing conditions-of-confinement claims necessarily dashes Plaintiff's arguments here that exhaustion does not pertain to him. He is simply incapable of independently choosing to bypass the identified benefits of exhaustion, which "include allowing a prison to address complaints about

the program it administers before being subjected to suit, reducing litigation to the extent

complaints are satisfactorily resolved, and improving litigation that does occur by leading to the

preparation of a useful record." *Jones*, 549 U.S. at 219 (citing *Woodford*, 548 U.S. at 88-

91; *Porter*, 534 U.S. at 524-525).

The Court therefore grants summary judgment for CCD.

## V. CONCLUSION

**IT IS ORDERED** that:

**(1)** Because Plaintiff did not exhaust administrative remedies as to his claims against

Cache County Defendants, their summary-judgment motion is **GRANTED**. (ECF No. 120.)

Defendants Maughan, Peck, and Yahne are thus **DISMISSED** from this action without

prejudice.[1]

**(2)** Defendants' motion to strike Plaintiff's surreply is **DENIED** as moot. (ECF No. 127.)

Plaintiff has withdrawn the surreply. (ECF No. 126, 128.)

DATED this 30th day of March, 2023.

BY THE COURT:

JUDGE DAVID NUFFER
United States District Court

---

[1] Generally, "courts should . . . dismiss . . . unexhausted claims without prejudice." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).