THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| VIVEK LAKHUMNA,<br><br>                              Plaintiff,<br><br>          vs.<br><br>SGT. MESSINGER et al.,<br><br>                              Defendants. | **MEMORANDUM DECISION & ORDER GRANTING UTAH DEPARTMENT OF CORRECTIONS DEFENDANTS' SUMMARY-JUDGMENT MOTION**<br><br>Case No. 4:18-CV-81 DN<br><br>District Judge David Nuffer |

Plaintiff's verified fifth amended civil-rights complaint (FAC), 42 U.S.C.S. § 1983 (2023), remains at issue. (ECF No. 38.) After nearly five years, this litigation has been pared down through six iterations of the complaint, (ECF Nos. 6, 10, 14, 18, 23, 38); a screening order dismissing ten defendants, (ECF No. 43); a motion to dismiss granted for three other defendants, (ECF No. 116); and summary judgment in favor of yet five more defendants, (ECF Nos. 137, 138). Notably, Plaintiff had six chances to get the complaint how he wanted it, with the Court providing detailed guidance on how to cure deficiencies and state claims. (ECF Nos. 15, 31.)

Ten defendants remain, all affiliated with Utah Department of Corrections (UDOC): Captain **Bradbury**; Lieutenant **Eddleman**; Officer **Kemple**; Lieutenant **Mason**; Lieutenant **Pei**; Officer **Quayle**; Officer Justin **Ramirez**; Case Manager **Toone**; Chaplain **Weber**; and Lieutenant **Wood**. (ECF No. 38.) This Order grants their summary-judgment motion. (ECF No. 100.) This action is resolved by dismissal of these remaining claims.

The two causes of action against these ten defendants are resolved in this order. First, Plaintiff asserts Defendants Bradbury, Eddleman, Pei, Quayle, Toone, and Weber violated

Plaintiff's First Amendment right to free exercise of his Hindu religion. (ECF No. 38, at 19.) Specifically, he alleges these six defendants denied his requests for religious access--i.e., dietary requirements and possession of religious items. (*Id.*) Second, Plaintiff asserts Defendants Kemple, Mason, Ramirez, and Wood violated his Fourteenth Amendment right to "due process in his disciplinary hearings."[1] (*Id.* at 20.)

Plaintiff seeks the following remedies: damages, fines, and return of "all funds taken without due process." (*Id.* at 21.)

Defendants now move for summary judgment on two separate bases: (a) the first six defendants' affirmative defense of Plaintiff's failure to exhaust his administrative remedies in UDOC's grievance process; and (b) the last four defendants' affirmative defense of qualified immunity. (ECF No. 100.) Defendants' motion relies on affidavits, UDOC policies, and copies of UDOC records. (ECF Nos. 88, 89, 98, 99.) Plaintiff's relevant evidentiary support for his positions stems from the verified allegations of the FAC, (ECF No. 38), to which he attached copies of inmate request and grievance forms, a memorandum, letters, and disciplinary forms, (ECF Nos. 38-1 to -22). Plaintiff did not attach any further evidence to his Response to State Defendants' *Martinez* Report or Memorandum in Opposition to Motion for Summary Judgment. (ECF Nos. 95, 105.)[2]

---

[1] Plaintiff also cursorily suggests he has an equal-protection claim, based on this assertion: "Plaintiff's property is taken from him, when he is housed in county jails. Thus, treated different than inmates housed in a state facility." (ECF No. 38, at 20.) But he has not affirmatively linked these allegations to any specific defendant--i.e., an individual who was at a jail *and* at a state facility, who treated Plaintiff's possession of his property differently based on his location at one or the other. The Court therefore does not further address equal protection.

[2] Plaintiff's summary-judgment opposition incorrectly states, "Plaintiff has plead factual content that allows the court to draw reasonable inferences, that defendants are liable for misconduct alleged. Plaintiff's complaint is sufficient and rests on its contents alone. The court may not look to the *Martinez* report, or any other pleading outside the complaint itself." (ECF No. 105, at 5.) The Court ordered Defendants to file a *Martinez* report and summary-

Having thoroughly reviewed all relevant documents containing the parties' arguments and evidentiary exhibits, the Court grants UDOC Defendants' summary-judgment motion (a) for the first six defendants on their affirmative defense of Plaintiff's failure to exhaust his administrative remedies in UDOC's grievance process; and (b) for the last four defendants on their affirmative defense of qualified immunity.

I. STANDARD OF REVIEW ........................................................................................................ 4
    A. *PRO SE* PLAINTIFF ......................................................................................................... 4
    B. SUMMARY JUDGMENT ................................................................................................... 4
II. ADMINISTRATIVE-EXHAUSTION DEFENSE ................................................................... 5
    A. LEGAL STANDARDS ........................................................................................................ 5
    B. UNDISPUTED MATERIAL FACTS .................................................................................. 8
    C. EXHAUSTION ANALYSIS .............................................................................................. 12
III. QUALIFIED-IMMUNITY DEFENSE .................................................................................. 17
    A. QUALIFIED-IMMUNITY STANDARD ......................................................................... 22
    B. UNDISPUTED MATERIAL FACTS ................................................................................ 25
        1. Defendants Kemple and Wood and the Clogs ............................................................ 25
        2. Defendants Mason and Justin Ramirez, Missing Property, and "Threats" ................ 27
    C. QUALIFIED-IMMUNITY ANALYSIS ........................................................................... 30
        1. Disallowing Evidence and Witnesses in Disciplinary Hearings ............................... 30
        2. Arbitrariness of Disciplinary Actions ........................................................................ 33
        3. Qualified Immunity Conclusion ................................................................................. 43
IV. MOTION TO SEAL ............................................................................................................... 43
V. CONCLUSION ........................................................................................................................ 45

---

judgment motion, as they were needed to pierce the FAC's allegations. (ECF No. 43.) Thus, Plaintiff's reliance on his complaint to raise issues of fact or argue the law raised on this motion is misplaced.

# I.  STANDARD OF REVIEW

## A. *PRO SE* PLAINTIFF

Plaintiff proceeds *pro se*. The Court thus "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). Still, a *pro se* party's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It may not be assumed that Plaintiff can prove facts not asserted, or that Defendants have violated laws in ways Plaintiff has not asserted. *Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (stating court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (stating court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Plaintiff's *pro se* status does not entitle him to application of looser rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## B. SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). The Court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

"Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted). "Those specific facts must be supported by particular parts of materials in the record; relying on mere pleadings is insufficient." *Id.* (citation and internal quotation marks omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self*, 439 F.3d at 1230 (internal quotation marks omitted.).

Finally, the Court specifically notified Plaintiff of his burden on summary judgment, by attaching to its October 13, 2020 Order, the complete language of Federal Rule of Civil Procedure 56 and District of Utah Local Civil Rule 56-a. (ECF No. 43, at 9-11.)

## II. ADMINISTRATIVE-EXHAUSTION DEFENSE

Defendants argue that the claims against Defendants Bradbury, Eddleman, Pei, Quayle, Toone, and Weber should be dismissed because Plaintiff did not exhaust his administrative remedies in the UDOC grievance process. (ECF No. 100, at 30.)

### A. LEGAL STANDARDS

In enacting the Prison Litigation Reform Act of 1995 (PLRA), Congress "impos[ed] a strict administrative-exhaustion requirement . . . [on] civil-rights claims filed by prisoners." *Pakdel v. City and Cnty. of San Francisco*, 141 S. Ct. 2226, 2231 (2021) (per curiam) (citing 42 U.S.C.S. § 1997e(a) (2023)). That section states, "No action shall be brought with respect to prison conditions under [42 U.S.C.S. § 1983 (2023)], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (2023). The Supreme Court has often

5

emphasized, "[T]hat language is 'mandatory.'" *Ross v. Blake*, 578 U.S. 632, 638 (2016) ("An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.") (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court."))); *Gray v. Sorrels*, 818 F. App'x 787, 791 (10th Cir. 2020) (unpublished) ("[T]he district court is not authorized to dispense with [the statutory exhaustion requirement].") "There is no question that . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("All agree that no unexhausted claim may be considered."). Indeed, PLRA "requires compliance with 'deadlines and other critical procedural rules,' *Woodford*, 548 U.S. at 90-91, with no exceptions for 'special circumstances.'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022); *see Ross*, 578 U.S. at 639 ("PLRA's text suggests no limits on an inmate's obligation to exhaust--irrespective of any 'special circumstances.'"); *Miller v. French*, 530 U.S. 327, 337 (2000) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."); *see also McNeil v. United States*, 508 U.S. 106, 111 (1993) (stating "we are not free to rewrite the statutory text" when Congress has strictly barred "claimants from bringing suit in federal court until they have exhausted their administrative remedies").

The Supreme Court has held that the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90. "Proper exhaustion" intends use of "'all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Indeed, the "rules are defined not by PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218; *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural

requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." (citation omitted)). The Supreme Court concedes this requirement will stymie some prisoner cases, but observes that a "centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision, § 1997e(a)." *Woodford*, 548 U.S. at 84, 103 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also id.* at 103 (responding to argument "that requiring proper exhaustion is harsh for prisoners, who generally are untrained in the law and are often poorly educated," Supreme Court notes "that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements").

An inmate's failure to exhaust is an affirmative defense, *Jones,* 549 U.S. at 216, and the burden is on the defendant to prove the failure to exhaust, *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). But, "[w]hen a defendant has established that an inmate did not exhaust his or her administrative remedies, the burden then shifts to the plaintiff to establish the grievance process was unavailable." *May*, 929 F.3d at 1234.

Indeed, "PLRA contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Section 1997e(a)'s exhaustion requirement depends on an administrative remedy's availability. *See id.* As explained by the Supreme Court, that means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court further identified three situations "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. Those are as follows: (1) "[W]hen

(despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (2) "[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"--i.e., "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644 (stating "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion"). And, (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

## B. UNDISPUTED MATERIAL FACTS

1. At the relevant times, Plaintiff was "a practicing Hindu" and UDOC inmate, housed at various times at Cache County Jail (CCJ), Central Utah Correctional Facility (CUCF) and Utah State Prison (USP), all providing "Kosher and Halal meals" and "feast/fast meals for religious observances." (ECF No. 38, at 17.)

2. At the relevant time, Defendant **Bradbury** was supervisor of UDOC's Inmate Placement Program (IPP); Defendant **Eddleman** was the lieutenant over USP's religious services; Defendant **Pei** was USP's religious services lieutenant; Defendant **Quayle** was CUCF's housing unit officer; Defendant **Toone** was IPP's manager; and Defendant **Wood** was USP's disciplinary hearing officer. (ECF No. 38, at 5-13.)

3. UDOC has a grievance process for inmates with the following relevant elements:

   a. Staff members are trained as to "the grievance system." (UDOC grievance policy, ECF No. 88-1, at 5.)

b. New inmates "receive orientation concerning the grievance system," with copies of the grievance policy to "be made available to inmates for review during their incarceration." (*Id.*)

c. "Fixed time limitations are applicable to each level of the grievance." (*Id.* at 10.)

d. "No stage shall be totally deleted because each decision maker constitutes a level at which administrative action can be taken." (*Id.*)

e. "Within seven working days of an incident or seven working days from the time the inmate knew or should have known about a grievable incident, they shall obtain and complete [a] Grievance form . . . and submit it." (*Id.* at 12.)

f. "If the Level One . . . attempt to resolve the grievance fails, the inmate shall have five working days to" submit a Level Two grievance. (*Id.*)

g. Inmates dissatisfied with the "decision [at Level Two] have five working days to appeal the decision to the Department's Hearing Office [at Level Three]." (*Id.* at 13.)

h. "There is no further administrative appeal from the Hearing Office level. The Level Three decision is final." (*Id.* at 14.)

4. In June 2014, Lucy Ramirez[3] "began working with the Director of Administrative Services and started assisting him with responses to Grievances filed by inmates." (Ramirez 1st Decl., ECF No. 89-6, at 3.)

---

[3] Earlier in this action, Lucy Ramirez was a defendant, dismissed on October 13, 2020. (ECF No. 43.)

5. In September 2015, Defendant Weber "refused to assist Plaintiff with his religious needs," but instead "plaintiff was referred back to the Religious Service department for all his religious needs." (ECF No. 38, at 7.)

6. In May 2016, Plaintiff provided Defendant Pei "with information on his sect's practices and observances." (*Id.* at 10.)

7. In June 2016, Defendant Pei "admitted he understood that Plaintiff followed a particular sect under the Hindu religion," yet "chose to only approve one religious observance for Plaintiff and deny all others," including deciding "which religious observances Plaintiff would be allowed to observe in the 2017 calendar year," "rather [than] allowing Plaintiff's own religion to be the guide," "though Plaintiff provided [Pei] with a Hindu calendar, with all the dates." (*Id.*)

8. In July 2018, Plaintiff told Defendant Toone that he was being discriminated against at CCJ for being Hindu, but Toone responded that CCJ's current policies and procedures would govern whether he received "equal access to practice [his] religion" at CCJ, even though "it was policy to provide Kosher meals to Jewish inmates." (*Id.* at 5.)

Also in July 2018, Plaintiff wrote a letter to Defendant Bradbury alleging religious discrimination, then met with Bradbury at CCJ, when Bradbury said Plaintiff could receive Jewish Kosher meals and "that Hinduism is not a recognized religion and as per prisons contract with [CCJ] only Jewish inmates would receive religious meals." (*Id.* at 6.)

9. On July 6, 2018, Defendant Toone replied to Plaintiff's CCJ "Inmate Request and Grievance Form," marked "Other Mr. Toone," on which Plaintiff stated his desire to have the same religious access at CCJ that he would have at Utah State Prison, by saying, "While at any county jail, the policy and procedures apply for where you are housed." (ECF No. 38-6.)

10. On July 7, 2018, Plaintiff wrote Defendant Bradbury a letter about his lack of access to religious items and meals at CCJ. (ECF No. 38-7.)

11. In August 2018, Defendant Eddleman "declined to look at [Plaintiff's religious reference books] and only re-stated that Hindu inmates would only receive a feast meal for one Hindu religious observance," "[r]egardless of the fact that there are several Hindu religious observances throughout the year." (ECF No. 38, at 6.)

12. On August 20, 2018, Plaintiff filed a level-one grievance form (number 990902111), in which he stated Defendant Eddleman told him CUCF "does not provide religious meals for Hindus" and Plaintiff "could not receive feast/fast boxes for valid Hindu religious observances." (ECF Nos. 38-15, at 2; 99-2, at 3.)

13. In September 2018, Plaintiff received a letter from Defendant Eddleman saying "Plaintiff will only receive a feast meal for one Hindu religious observance out of the calendar year." (ECF No. 38, at 6.)

14. On September 4, 2018, Plaintiff filed a level-one grievance form, in which he asserted that, on August 20, 2018, when he talked to Defendant Eddleman, he "was told Gunnison does not provide religious meals for Hindus" and he "could not receive feast/fast boxes for valid Hindu religious observances." (ECF No. 99-2, at 3.)

Also on September 4, 2018, a "Grievance Problem Form" was filed at CUCF as to grievance number 990902111, in which Plaintiff was notified, "You cannot grieve this. You have already grieved this once. . . . A grievance has already been opened on this issue. . . . If you choose to address the problems listed above, please submit a NEW grievance form WITH THIS GRIEVANCE PROBLEM FORM ATTACHED." (ECF Nos. 38-15, at 1; 99-2, at 2.)

15. On September 6, 2018, Defendant Eddleman wrote Plaintiff a letter stating that "every Monday" Hindu inmates were offered "feast[] box/bags" and that "a religious meal form" was sent to Plaintiff. (ECF No. 38-8.)

16. On January 30, 2019, giving "no reason," Defendant Quayle "took a feast box with food in it, from Plaintiff," which "feast box was given to Plaintiff to observe a Hindu religious observance." (ECF No. 38, at 11.)

## C. EXHAUSTION ANALYSIS

With this backdrop of law and facts, the Court concludes that it is undisputed that UDOC has a three-level grievance system. (ECF No. 88-1, at 12-14.) So, general principles dictate that Plaintiff was required to complete all three levels available, before bringing this federal civil-rights action.

The evidence provided shows, though, that--regarding Defendants Bradbury, Eddleman, Pei, Quayle, Toone, and Weber allegedly violating Plaintiff's First Amendment rights to free exercise of his Hindu religion by denying his requests for religious access (e.g., dietary requirements and possession of religious items), (ECF No. 38, at 19)--Plaintiff did not file any grievance to level three, as required by UDOC policy.

In chronological order, Plaintiff's allegations against each of these six defendants may be summarized as follows:

(1) In September of 2015, Defendant Weber refused to help with Plaintiff's religious needs. (ECF No. 38.)

(2) In May and June of 2016, Defendant Pei approved only one religious observance. (*Id.*)

12

(3) In July 2018, Defendant Toone was told of CCJ's religious discrimination but did

nothing about it. (*Id.*)

(4) In July 2018, Plaintiff wrote Defendant Bradbury regarding CCJ's religious

discrimination. (*Id.*)

(5) In August and September 2018, Defendant Eddleman denied Plaintiff's religious-meal

requests. (*Id.*)

(6) On January 30, 2019, Defendant Quayle took Plaintiff's religious feast box. (*Id.*)

Yet Plaintiff triggered UDOC's grievance process as to only one of these scenarios: the

one involving Defendant Eddleman. On August 20, 2018, Plaintiff filed a grievance form

(number 990902111), in which he stated Defendant Eddleman told him CUCF "does not provide

religious meals for Hindus" and Plaintiff "could not receive feast/fast boxes for valid Hindu

religious observances." (ECF Nos. 38-15, at 2; 99-2, at 3.) Then, on September 4, 2018, Plaintiff

filed a level-one grievance form, in which he asserted that, on August 20, 2018, when he talked

to Defendant Eddleman, he "was told Gunnison does not provide religious meals for Hindus"

and he "could not receive feast/fast boxes for valid Hindu religious observances." (ECF No. 99-

2, at 3.) Also on September 4, 2018, a "Grievance Problem Form" was filed at CUCF regarding

grievance number 990902111, in which Plaintiff was notified, "You cannot grieve this. You have

already grieved this once. . . . A grievance has already been opened on this issue. . . . If you

choose to address the problems listed above, please submit a NEW grievance form WITH THIS

GRIEVANCE PROBLEM FORM ATTACHED." (ECF Nos. 38-15, at 1; 99-2, at 2.) The latter

is the last of the documents the Court has received as evidence of the grievance process for

Plaintiff's claim against Defendant Eddleman. No grievance forms past level one have been

placed in the record; so, based on the evidence before the Court, the Court concludes that the grievance process was not exhausted.

Plaintiff offers no arguments or evidence to contest the evidence showing that he did not exhaust UDOC's grievance process as to any of these defendants. So, these six defendants have met their burden of showing Plaintiff's failure to exhaust administrative remedies.

That shifts the burden to Plaintiff, who argues the grievance process was unavailable to him. His allegations possibly fit under only the first of the three scenarios identified by the Supreme Court: "when (despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See Ross*, 578 U.S. at 644.

Plaintiff essentially argues the grievance process became unavailable to him because his September 4, 2018 level-one grievance was denied, with a response, stating, "You cannot grieve this." (ECF Nos. 38-15, at 1; 99-2, at 2.) He argues that "[i]f prison officials inform the prisoner that he cannot file a grievance, the formal grievance proceeding was never available within the meaning of 42 U.S.C. § 1997e." (ECF Nos. 95, at 1; 105, at 3.)

Plaintiff also cites *Booth*, 532 U.S. at 731, and *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004), *abrogated on other grounds by Jones*, 549 U.S. at 199, to support his arguments. For instance, Plaintiff contends that "*Booth* made quite clear that the statutory language does not require exhaustion when no pertinent relief can be obtained through the internal process." (ECF No. 95.) He further emphasizes *Ross*'s holding that "'[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted.'" (ECF No. 105, at 3 (quoting *Ross*, 365 F.3d at 1187).)

14

In *Booth*, the issue was whether the exhaustion requirement hinged on the type of remedy available within the administrative process. 532 U.S. at 733. The *Booth* inmate sought monetary damages, yet the grievance process available was not capable of awarding monetary damages. *Id.* at 734. Despite that incapability, the Supreme Court held that "an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." *Id.* at 734. Though *Booth* is not completely on point, its holding actually cuts against Plaintiff's argument. The *Booth* inmate was required to keep raising his request for monetary relief at each grievance level provided, even though the grievance process presented no opportunity for monetary relief--the very thing the inmate sought. It makes sense then that--although Plaintiff may have believed that a remedy was unavailable to him once his grievance was rejected--he was required to seek relief at each of the three levels of UDOC's grievance process. *Booth* supports this, despite Plaintiff's attempts to use *Booth* to the contrary.

Next, in *Ross*, the Tenth Circuit stated that "once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." 365 F.3d at 1187. *Ross* says, "Prisoners are not required to file additional complaints or appeal *favorable* decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete." *Id.* (emphasis added) (citing *Gomez v. Winslow*, 177 F. Supp. 2d 977, 985 (N.D. Cal. 2001) ("Because [the plaintiff] had, in essence, 'won' his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is allowed to file suit.") (alteration in original)).

So *Ross* is inapposite here, where Plaintiff seeks to be excused from appealing an *unfavorable* decision. On August 20, 2018 and September 4, 2018, Plaintiff filed level-one

grievance forms, in which he asserted that, on August 20, 2018, when he talked to Defendant

Eddleman, he "was told Gunnison does not provide religious meals for Hindus" and he "could

not receive feast/fast boxes for valid Hindu religious observances." (ECF Nos. 38-15, at 2; 99-2,

at 3.) The record does not contain UDOC's response to the August 20, 2018 grievance, nor any

information that Plaintiff filed level-two and level-three grievances. But, UDOC rejected

Plaintiff's duplicative September 4, 2018 level-one grievance. (ECF Nos. 38-15, at 1; 99-2, at 2.)

There is no evidence that Plaintiff received a favorable decision at any point. Under *Ross*, then,

Plaintiff was not excused from raising these grievance denials in level-two and -three grievances.

Still, all Plaintiff's arguments center on his contention that the grievance process was

unavailable for only one out of the six defendants raising their administrative-exhaustion

defense. He has not addressed at all his failure to file any grievances as to the FAC's claims

against Defendants Bradbury, Pei, Quayle, Toone, and Weber. So for these five defendants, he

has not even tried to carry his burden of showing the grievance process's unavailability. And as

to Defendant Eddleman, even as UDOC rejected Plaintiff's duplicative September 4, 2018 level-

one grievance, UDOC simultaneously told him that he could "address the problems" identified

and submit a new grievance form. (ECF Nos. 38-15, at 1; 99-2, at 2.) This language actually

*invites* Plaintiff's continued engagement in the grievance process, not shutting him down, as he

suggests. If Plaintiff had tested UDOC's invitation by "address[ing] the problem" and submitting

a new grievance form, there might be more conclusive information on whether UDOC's

grievance process was genuinely available to Plaintiff. But he did not; therefore, the only

evidence available to the Court is that Plaintiff neither exhausted his grievances nor carried his

burden to show the grievance process was unavailable.

The exhaustion requirement applies to all inmates filing conditions-of-confinement claims against all potential wrongdoers. Plaintiff's arguments here that exhaustion does not pertain to him are wrong. He is not able to unilaterally elect to bypass the identified benefits of exhaustion, which "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219 (citing *Woodford*, 548 U.S. at 88-91; *Porter*, 534 U.S. at 524-525).

The Court therefore grants summary judgment for UDOC Defendants Bradbury, Eddleman, Pei, Quayle, Toone, and Weber.

### III. QUALIFIED-IMMUNITY DEFENSE

The last four defendants--Kemple, Mason, Ramirez, and Wood-- assert their dispositive affirmative defense of qualified immunity as a basis for summary judgment in their favor. (ECF No. 100, at 26.) In other words, they contend they did not violate Plaintiff's clearly established constitutional rights, (*id.*), "creat[ing] a presumption that [they] are immune from suit," *Truman v. Orem City*, 1 F. 4th 1227, 1235 (10th Cir. 2021) (quotation marks and citation omitted). This shifts the burden to Plaintiff to show otherwise. *See Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020). Having thoroughly reviewed all the parties' arguments and evidence, the Court concludes the qualified-immunity defense shields Kemple, Mason, Ramirez, and Wood from further litigation.

An important word at this section's start: Defendants may not be lumped together as a group, but must be treated as individuals, considering the plaintiff's claim(s) against each

defendant, based on each defendant's own behavior. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (stating, because § 1983 is "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants"); *Robbins v. Okla. ex rel. Dept' of Human Servs*., 519 F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against  him . . . as distinguished from collective allegations") (emphasis in original) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants--"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

The Court carefully focuses on Plaintiff's specific allegations and causes of action--*for each remaining defendant*--contained in the FAC; otherwise, some of the documents presented as evidence, together with the parties' later arguments, could appear to be trying to expand what is legitimately at issue here. In the FAC, which governs this litigation's parameters, Plaintiff is clear that Kemple is the seventeenth defendant; Wood is the nineteenth defendant; Mason is the twentieth defendant; and Ramirez is the twenty-first defendant. (ECF No. 38, at 11-13.) He then lists three causes of action and states which defendant numbers are linked to each cause of action. (*Id.* at 19-20.) Kemple, Mason, Ramirez, and Wood are linked only to the cause of action

18

listed as "Count III: Fourteenth Amendment - Due process of law and equal protection of laws."[4]

(*Id.* at 20.) Under Count III, the allegations relevant to these four remaining defendants are as

follows: "Plaintiff was denied due process in his disciplinary hearings. Plaintiff was not allowed

to present evidence and call witnesses."[5] (*Id.*) Plaintiff also characterizes his due-process claims

as involving "arbitrary action of Government." (*Id.* at 17.)

---

[4] The Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

[5] Allegations under Count III that are irrelevant to these four remaining defendants are as follows:
> Plaintiff is not treated equally in regards to religious meals. . . . Plaintiff does not receive responses to his grievances. Plaintiff's property is taken from him when he is housed in county jails. Thus, treated different than inmates housed in a state facility. Plaintiff has already been denied legal assistance with his amended complaint. Legal research consists of only three case laws per week.

(ECF No. 38, at 20.)
> Allegations as to the four remaining defendants have nothing to do with them providing, or being responsible for providing, religious meals, grievance responses, or legal help. (ECF No. 38.) Also, these four defendants were with UDOC and so would not have taken Plaintiff's property when "he [was] housed in county jails." (*Id.*)
> Regarding Plaintiff's vague denouncement of the "grievance department," stating it "will not answer Plaintiff's grievances," (*id.* at 18), it is unclear whether and how Plaintiff intends for this to be part of his claim about lack of due process. If he does intend that, he fails. For one, he does not affirmatively link any specific defendant to these allegations as he must whenever seeking to properly state a claim upon which relief may be granted. Again, "[t]o state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (emphasis in original) (quoting *Robbins*, 519 F.3d at 1250). For another, grievance denial alone with no connection to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, there is no constitutional right to a grievance process. *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) ("[T]here is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process."); *Dixon v. Bishop*, No. CV TDC-19-740, 2020 U.S. Dist. LEXIS 41678, at *20 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.").
> Next, Plaintiff denounces "the current legal assistance program, provided by the Utah State prison," deeming it "grossly inadequate" and stating, "Plaintiff is unable to perform a preliminary research [sic]." (ECF No. 38, at 19.) Again, if Plaintiff means for this to be part of his due-process claims, by not affirmatively linking a specific defendant, he does not state a claim upon which relief may be granted. *See Stone*, 338 F. App'x at 759. Still, even if Plaintiff had named UDOC's "contract attorneys" as defendants, he would not have stated a valid claim. *Smith v. Freestone*, Case No. 2:97-CV-944, in a report and recommendation adopted by the district judge's dismissal order, states, "Prison contract attorneys do not work under color of state law for purposes of § 1983." *See id.*, slip op. at 3 (D. Utah Aug. 20, 1998). The dismissal was affirmed by the Tenth Circuit, ruling that attorneys contracting with the state to provide legal help to inmates were not acting under "color of state law" in performing those duties. *Smith v. Freestone*, No. 99-4005, 1999 U.S. App. LEXIS 16766, at *2 (10th Cir. July 20,1999); *cf. Polk County v Dodson*, 454 U.S. 312, 321 (1981) ("[A] public defender is not amenable to administrative direction in the same sense as

Now, the Court breaks down Plaintiff's particular allegations individually against each remaining defendant, as stated in the FAC:

(1) In August 2018, after Defendant Justin Ramirez "handled [Plaintiff's] property"[6] regarding Plaintiff's move between facilities, Ramirez received a letter from Plaintiff "in regards

_____

other employees of the State."). Finally and fatally, Plaintiff has not alleged facts supporting each element of a legal-access claim. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977) (stating "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." (footnote omitted & emphasis added)); *Penrod v. Zavaras*, 84 F.3d 1399, 1403 (10th Cir. 1996) (holding, to successfully assert constitutional claim for denial of access to courts, plaintiff must allege not only inadequacy of library or legal assistance provided but also "that the denial of legal resources hindered [the plaintiff's] efforts to pursue a nonfrivolous claim"); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995) (declaring non-frivolous litigation involved must be "habeas corpus or civil rights actions regarding current confinement"); *accord Lewis v. Casey*, 518 U.S. 343, 353-55 (1996); *see also Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (explaining plaintiff must show "denial or delay of access to the court prejudiced him in pursuing litigation"). The general elements of a legal-access cause of action were provided for Plaintiff in two earlier orders that identified deficiencies in his Second and Fourth Amended Complaints and gave guidance on curing those deficiencies. (ECF Nos. 15, 31.) Still, Plaintiff did not observe the Court's advice in his FAC, in which he did not allege facts supporting elements of this cause of action. (ECF No. 38.)

The Court disregards these arguments going forward.

[6] In other documents outside the FAC, Plaintiff appears to refer to Defendant Justin Ramirez as having stolen his property. As stated, such assertions are disregarded because they are not within four corners of the FAC, which sets out the causes of action and relevant supporting allegations. But, even if Plaintiff had included a claim about Ramirez stealing his property, Plaintiff would have needed to show very specific things--that he has not shown--about this alleged unauthorized deprivation. These things may be derived by reviewing the legal tenets set forth below.

"[A]n unauthorized . . . deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). And "the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id.* The question is whether Utah "provide[d Plaintiff] an adequate postdeprivation remedy for the alleged destruction of his property." *Id.* at 534. This could be "a suit in tort," *id.* at 535, or "state-common-law remedies," *Hudson*, 468 U.S. at 533, or "the prison grievance procedure." *Griffin v. Hickenlooper*, 549 F. App'x 823, 828 (10th Cir. 2013) (unpublished).

"[T]hat [Plaintiff] might not be able to recover under [state postdeprivation remedies] the full amount which he might receive in a § 1983 action is not . . . determinative of the adequacy of the state remedies." *Hudson*, 468 U.S. at 535. Further, it is not enough for a plaintiff to allege that he filed a grievance from which he got no relief; he must also allege "that the process was unavailable or inadequate to him." *Allen v. Reynolds*, 475 F. App'x 280, 283 (10th Cir. 2012) (unpublished); *Harris v. Chabries*, 114 F. App'x 363, 365 (10th Cir. 2004) (unpublished) (stating plaintiff "failed to allege that state law post-deprivation remedies . . . were inadequate" and, without "such an allegation, the taking of his property does not violate due process"); *Schlicher v. Gibbens*, No. 92-3087, 1993 U.S. App. LEXIS 9131, at *6 (10th Cir. Apr. 20, 1993) (unpublished) (holding, when inmate's property was seized and destroyed, he "clearly had an alternative state remedy: he presented both a property claim and an administrative grievance" and "[t]he fact that plaintiff did not receive relief through these avenues does not entitle him to present his claim under § 1983"); *see also Hudson*, 468 U.S. at 539 (O'Connor, J., concurring) (stating "in challenging a

to . . . missing property. . . . Plaintiff was following the procedure outline in the grievance process. In retaliation, Defendant accused Plaintiff of robbery/extortion and sent Plaintiff to disciplinary."[7] (*Id.* at 13, 18.)

(2) In September 2018, Defendant Kemple "notified Plaintiff that [his] orange clogs were contraband," giving Plaintiff "three choices" of throwing the clogs in the trash, sending them "out in property," or having them "confiscated," then "gave Plaintiff a write-up for contraband" possession. (*Id.* at 11.)

(3) In September of 2018, Defendant Wood was the hearing officer conducting Plaintiff's disciplinary hearing on the contraband charge initiated by Defendant Kemple. (*Id.* at 12.) "When Plaintiff requested to present evidence and call witnesses, Plaintiff was then threatened by

---

property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate").

[7] Plaintiff also uses the term "retaliation" similarly regarding Defendant Kemple, when he says that Kemple "in retaliation gave Plaintiff a write-up for contraband." (ECF No. 38, at 11.) Plaintiff uses the term "retaliation" in both these isolated references, but does not otherwise mention "retaliation" specifically as a cause of action in the FAC, in which he details his constitutional claims as violations of only his religious and due-process rights. (ECF No. 38, at 19-20.)

> Plus, Plaintiff does not allege facts supporting retaliation as a cause of action.
>
> > A prisoner claiming retaliation must prove that "but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotation omitted). But it is "not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison," so the prisoner must allege specific facts that demonstrate retaliation in response to his exercise of his constitutional rights. *Id.*
>
> *Chapman v. Lampert*, 711 F. App'x 455, 458 (10th Cir. 2017) (unpublished). The elements of a retaliation cause of action were provided for Plaintiff in an earlier order that identified deficiencies in his Second Amended Complaint and gave guidance on curing those deficiencies. (ECF No. 15.) Still, Plaintiff did not observe the Court's advice in drafting his FAC, if he had wished to bring a proper retaliation claim.
>
> Finally, Plaintiff's allegations are rejected because he may not "'state a claim of retaliation for a disciplinary charge involving a prison rule infraction' when [like here] a hearing officer finds that the inmate committed 'the actual behavior underlying that charge' and affords the inmate 'adequate due process.'" *Pinson v. Berkebile*, 576 F.App'x 710, 713 (10th Cir. 2014) (unpublished) (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011)). Plaintiff does not successfully challenge the adequacy of the procedural due process afforded him here.
>
> The Court thus does not treat Plaintiff's use of this word, "retaliation," as legally significant in terms of a separate civil-rights claim.

Defendant [Wood], that Plaintiff would be receiving another fine, if he did not state how he

pleas. Plaintiff plead[ed] not guilty and remained silent for the duration of the hearing, to avoid

another fine." (*Id.*) "The disciplinary was due to the orange color of the clogs. However, the

prison's own commissary sells stocking caps that are orange in color." (*Id.* at 18.) Defendant

Wood did not allow Plaintiff "to call a witness, nor present any evidence in his hearing[]." (*Id.*)

(4) In October of 2018, Defendant Mason was the hearing officer conducting Plaintiff's

disciplinary hearing on the extortion charge initiated by Defendant Ramirez. (*Id.* at 12-13.)

"Plaintiff provided defendant with a copy of the letter he wrote to officer Justin Ramirez,

regarding the missing property. Defendant is aware that the grievance process requires Plaintiff

to resolve an issue, prior to filing a grievance. Plaintiff was fined for following the grievance

process." (*Id.* at 12.) Defendant Mason did not allow Plaintiff "to call a witness, nor present any

evidence in his hearing[]." (*Id.* at 18.) Plaintiff asserts that he is "fined by the prison when [he]

follow[s] the grievance process." (*Id.* at 20.)

## A. QUALIFIED-IMMUNITY STANDARD

Qualified immunity requires that an official have fair notice of the law before being

subject to suit for damages for violating it. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Two

important interests are balanced by qualified immunity: "the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.

Callahan*, 555 U.S. 223, 231 (2009). Questions of qualified immunity should be resolved at the

soonest feasible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

Plaintiffs confronting qualified-immunity challenges do not face a higher-than-normal pleading requirement. *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (quoting *Pearson*, 555 U. S. at 231); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (stating qualified-immunity doctrine generally protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). It means to shelter "all but the plainly incompetent or those who knowingly violate the law," *City of Tahlequah*, 142 S. Ct. at 11 (quotation marks and citations omitted), giving "'government officials breathing room to make reasonable but mistaken judgments,'" *Martinez v. Jenneiahn*, No. 22-1219, 2023 U.S. App. LEXIS 17609, at *4 (10th Cir. July 12, 2023) (unpublished) (quoting *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))).

To be clear, when the qualified-immunity defense is raised, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5.

**Clearly Established Right**

A right was "clearly established" if it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Moreover, such a right must be "generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011) (unpublished) (quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983)). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quoting *Saucier v. Katz*, 533 U.S. at 202) (alteration in *Holland*, but not *Saucier*). A court should ask "whether the law put officials on fair notice that the described conduct was unconstitutional" instead of launching "a scavenger hunt for cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Indeed, based on existing precedent, the constitutional or statutory question must be "beyond debate." *al-Kidd*, 563 U.S. at 741.

As a "longstanding principle," the Supreme Court instructs courts not to define the constitutional right in question "'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Indeed, the clearly established law needs to be "particularized" to the case's facts. *Anderson*, 483 U.S. at 640. Without this requirement "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually

unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639. Still, "general statements of the law" are not necessarily incapable of clearly establishing a right, because they may at times give "fair and clear warning" to government employees. *United States v. Lanier*, 520 U.S. 259, 271 (2017); *see Pauly*, 137 S. Ct. at 552 (reiterating this principle). But crucially, the "unlawfulness must be apparent." *Creighton*, 483 U.S. at 640; *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) ("Of course, in an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law.") (citing *Hope*, 536 U.S. at 738 (noting, in case with "obvious" Eighth Amendment violation, materially similar case may not be needed for right to be clearly established)). A court must thus ask if clearly established law establishes as improper the actions that the officer took in the case's circumstances. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

The clearly established prong will generally be met if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)).

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

### B. UNDISPUTED MATERIAL FACTS

### 1. Defendants Kemple and Wood and the Clogs

a. At the relevant time, Defendant **Kemple** was CUCF's housing unit officer and Defendant Defendant **Wood** was USP's disciplinary hearing officer. (ECF No. 38, at 5-13.)

b. On May 21, 2018, a Beaver County Jail receipt shows Plaintiff bought "Orange Clogs" from the commissary. (ECF No. 38-16, at 6.)

c. In September 2018, in a UDOC facility where Plaintiff had been transferred, Defendant Kemple notified Plaintiff that the orange clogs he was wearing "were contraband" and gave Plaintiff the choice to throw them away, send them "out in property," or relinquish them for confiscation." (ECF No. 38, at 11.) Plaintiff's indigence kept him from mailing out the clogs, so he "gave his orange clogs to [Kemple]," who "in retaliation gave Plaintiff a write-up for contraband." (*Id.* at 11.)

d. On September 2, 2018, Defendant Kemple e-verified "Incident Report (Disciplinary)," in which Kemple summarized an incident with Plaintiff as follows: "Inmate Lakhumna you had unauthorized shoes in your possession"; and, "I noticed an inmate with orange shoes . . . that . . . were not allowed in the facility" and gave Plaintiff "the option to send them out, or receive a write up for contraband" [but] "inmate said that he wanted them confiscated [so s]hoes were confiscated." (ECF No. 89-5, at 2-3, 5 (Incident Case # 342797; Discipline Case # 711616).) Plaintiff was then charged with "possession of contraband." (*Id.* at 2.)

e. On September 20, 2018, Plaintiff was "given advance written notice of the disciplinary charge." (ECF No. 38-16, at 4.)

f. On September 25, 2018, a disciplinary hearing was held for the possession-of-contraband charge by Defendant Kemple against Plaintiff. (ECF No. 89-5, at 6 (Incident Case # 342797; Discipline Case # 711616).) The hearing "was due to the orange color of the clogs," though "the prison's own commissary sells stocking caps that are orange in color." (ECF No. 38, at 17-18.) When Defendant Wood, as disciplinary officer, asked how Plaintiff would like to

26

plead, "Plaintiff requested to present evidence and call witnesses," whereupon Wood told Plaintiff that he "would be receiving another fine if he did not state how he pleas," so Plaintiff pled "not guilty and remained silent for the duration of the hearing, to avoid another fine." (*Id.* at 12.) "Plaintiff was not allowed to call a witness, nor present any evidence." (*Id.* at 18.) Wood found Plaintiff guilty, based on "some evidence," in the form of the "[o]fficer's report stat[ing] inmate was in possession of unauthorized shoes." (ECF Nos. 38-16, at 2; 89-5, at 6.) As a result, Plaintiff was fined forty dollars. (ECF No. 38-16, at 2.)

g. On October 3, 2018, Plaintiff appealed his disciplinary conviction for contraband possession from September 25, 2018. (ECF No. 89-5, at 10 (Incident Case # 342797; Discipline Case # 711616).)

h. On December 11, 2018, as to Plaintiff's appeal of his disciplinary conviction for contraband possession (orange shoes), the disciplinary hearing officer's finding of "guilty" and the sanctions imposed were upheld. (*Id.* at 7-9.)

### 2. Defendants Mason and Justin Ramirez, Missing Property, and "Threats"

a. At the relevant time, Defendant **Mason** was USP's disciplinary hearing officer and **Defendant Justin Ramirez** was USP's housing officer. (ECF No. 38, at 5-13.)

b. At the relevant time, UDOC's grievance policy stated, "Inmates are required to make and to document reasonable attempts to resolve complaints informally." (ECF No. 88-1, at 6.)

c. At the relevant time, the criteria to be convicted of a UDOC disciplinary charge of extortion were as follows: "To obtain or attempt to obtain anything from a person by force, intimidation, threat or coercion directed against that person or another person (such as a family member)." (ECF No. 38-17, at 1.)

d. In August 2018, Defendant Ramirez "handled [Plaintiff's] property," "[w]hen Plaintiff was moved from the Draper facility to the Gunnison facility." (ECF No. 38, at 18.) After the move, "Plaintiff noticed some of his property was missing." (*Id.*)

e. On August 17, 2018, Plaintiff wrote a letter to Defendant Ramirez stating that he was "missing a white t-shirt and . . . plastic flowers" and was "prepared to file a 1983 in Federal court or any other legal action needed" if he did not receive his "property back." (ECF No. 38-17, at 3.) Plaintiff alleges that he "followed the grievance process, by first attempting to resolve the issue by writing a letter to" Ramirez. (ECF No. 38, at 18.)

f. On September 18, 2018, Defendant Ramirez completed a report, stating that on August 17, 2018, Ramirez received a letter from Plaintiff saying "two items of [Plaintiff's] property were missing and [Plaintiff] was prepared to take [Ramirez] to Federal Court over the issue." (ECF No. 89-4, at 3 (Incident Case # 343485).) Plaintiff alleges that Ramirez wrote this report to retaliate against Plaintiff for writing his initial letter to Ramirez saying he would pursue legal action if Plaintiff's property was not returned. (ECF No. 38, at 18.)

g. On September 19, 2018, Defendant Ramirez signed "Incident Report (Disciplinary)," in which Ramirez summarized an incident with Plaintiff as follows: "The inmate stated that two items of his property were missing [a white t-shirt and some plastic flowers] and that he was prepared to take me to Federal Court over the issue and that he would await my response." (ECF No. 89-4, at 3, 5.) The charges against Plaintiff were explained this way:

> By writing me a personal letter and threatening to take me to federal court over the issue rather than following the proper grievance steps, I believe this meets the criteria of charge A06 EXTORTION[, which] are . . . To obtain or attempt to obtain anything from a person by force, intimidation, threat or coercion directed against that person or another person . . . .

28

(ECF Nos. 38-17, at 1 (Incident Case # 343485; Discipline Case # 711896); 89-4, at 2.)

h. On September 26, 2018, Defendant Ramirez stated in an incident report (number 343485) that Ramirez received a letter from Plaintiff, in which Plaintiff stated a white shirt and plastic flowers were missing from his property, regarding which Plaintiff "was prepared to take [Ramirez] to federal court." (ECF No. 89-4, at 5.) Ramirez stated, "I have decided to charge Lakhumna with a A06 charge for Extortion." (*Id.*)

i. On October 18, 2018, Plaintiff gave Defendant Mason "a copy of the letter he wrote to officer Justin Ramirez, regarding . . . missing property," then "Plaintiff was fined." (ECF No. 38, at 13.) "Plaintiff was not allowed to call a witness, nor present any evidence." (*Id.* at 18.)

j. On October 23, 2018, a disciplinary hearing was held about the extortion charge initiated by Defendant Ramirez, as a result of which the disciplinary hearing officer, Defendant Mason, amended the charge of extortion to "Fighting/Threats/Horseplay," then "found 'some evidence' that [Plaintiff] was guilty of . . . Fighting/Threats/Horseplay," based on the scenario in which Plaintiff wrote a letter to Ramirez threatening to take him to federal court over missing property. (ECF Nos. 38-17, at 2; 88-11, at 4-5; 89-4, at 6 (Incident Case # 343485; Discipline Case # 711896).) The evidence upon which the disciplinary conviction was based was the "[o]fficer's report stat[ing] inmate wrote letter to staff member and threatened that staff member[, i]nstead of following the proper grievance process for the return of his property." (ECF No. 38-17, at 2.) Mason assessed Plaintiff a seventy-dollar fine. (*Id.*)

k. On January 10, 2019, regarding Plaintiff's appeal of his disciplinary conviction for "threats," the disciplinary hearing officer's finding of "guilty" and the sanctions imposed were

upheld by Lucy Ramirez in the Administrative Services Hearing Office.[8] (ECF Nos. 38-18, at 2; 89-4, at 7-9 (Incident Case # 343485; Discipline Case # 711896).)

## C. QUALIFIED-IMMUNITY ANALYSIS

Due to Defendants' assertion of a qualified-immunity defense, Plaintiff's burden is to show that Defendants Kemple, Mason, Ramirez, and Wood violated his clearly established federal constitutional rights to due process as to his disciplinary hearings. Plaintiff asserts due process was breached (1) when he was denied the chance to present evidence and witnesses at his two hearings; and (2) because the regulations or actions against him were arbitrary. (ECF No. 38, at 17, 20.)

### 1. Disallowing Evidence and Witnesses in Disciplinary Hearings

Plaintiff alleges that Defendants denied him due process when they prevented him from presenting documentary evidence and witnesses in his disciplinary hearings. (*Id.* at 20.) The only defendants involved in Plaintiff's disciplinary hearings were Defendants Mason and Wood, the hearing officers, so this section applies solely to them. (*Id.* at 12-13.)

---

[8] Plaintiff takes issue with Lucy Ramirez's statement in her January 10, 2019 letter about his disciplinary appeal, in which she asserted that Plaintiff "admitted threatening the officer and his family if [Plaintiff] did not get [his] property back." (ECF Nos. 38, at 18; 38-18, at 2.) It is true that none of the other aspects of this disciplinary situation suggested that Plaintiff had threatened Defendant Justin Ramirez's family. (See, e.g., ECF No. 38-17.) It could be that Lucy Ramirez mistakenly parroted the criteria to be convicted of a UDOC disciplinary charge of extortion, listed as follows: "To obtain or attempt to obtain anything from a person by force, intimidation, threat or coercion directed against that person or another person (such as a family member)." (ECF No. 38-17, at 1.) The Court therefore ignores Lucy Ramirez's characterization of Plaintiff as admitting to threatening Justin Ramirez's family. The Court further recognizes that Lucy Ramirez's characterization of Plaintiff admitting to threatening Justin Ramirez's family is irrelevant to the analysis here, which only discusses the due process Plaintiff received at his disciplinary hearing; none of the evidence from that hearing shows that Defendant Mason considered a threat to Justin Ramirez's family in ultimately finding Plaintiff guilty of an amended charge of "Fighting/Threats/Horseplay," instead of "Extortion/robbery." (ECF No. 89-4, at 6.)

Plaintiff discusses just two specific items of evidence under this claim. Regarding the hearing for the charge on possession of contraband, or orange clogs, he says his request to submit a document showing that orange stocking caps were sold in the prison commissary was rejected by Defendant Wood. (*Id.* at 18.) Regarding the hearing for the charge of extortion, he states that he gave a copy of his letter to Defendant Ramirez to Defendant Mason--so, contrary to his assertions otherwise, it appears he was allowed to present documentary evidence at that hearing. (*Id.* at 13.)

Among other things, due process in a prison disciplinary proceeding requires an inmate to receive "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). But an inmate may not pursue a due-process claim for failure to allow witness testimony or other evidence unless the inmate also shows that the testimony or evidence was relevant or "'would have affected the outcome of his case.'" *Bird v. Pacheco*, 729 F. App'x 627, 630-31 (10th Cir. 2018) (unpublished) (quoting *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993)); *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (noting inmate may not "maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony "would have affected the outcome of his case"); *Dopp v. McCoin*, No. CIV-18-520-D, 2019 U.S. Dist. LEXIS 74305, at *9 (W.D. Okla. May 2, 2019) (concluding petitioner's arguments that witness testimony and documentary evidence "might have affected the outcome of the hearing . . . is purely speculative").

Here, except for the document showing orange stocking caps are sold in the commissary, Plaintiff does not say what witnesses or evidence he asked to present, nor explain their relevance.

So the only possible due-process violation regarding the hearings could be the evidence about orange stocking caps -- the only identified evidence that was allegedly barred. However, Plaintiff has failed to effectively argue that this evidence would have "affected the outcome." *Bird*, 729 F. App'x at 630-31. This is because the disciplinary hearing was for the purpose of determining whether there was some evidence that Plaintiff had possessed orange clogs, which apparently qualified as "contraband" under UDOC policy. The disciplinary hearing was *not* for the purpose of determining whether the contraband rule itself was arbitrary, in light of the commissary's offering of orange stocking caps for sale. Plaintiff never suggests that he tried to argue that he did not possess the orange clogs, so any other evidence would have been irrelevant to Defendant Wood.

Plaintiff's failure to specify witnesses or evidence (aside from the commissary's offering of orange stocking caps for sale) that he tried to present at his hearings vitiates his arguments that he was denied due process by that alleged action. His further failure to show that the rejected evidence of orange stocking caps for sale would have changed the outcome delivers the final blow to this due-process claim.

In sum, based on the undisputed material facts taken in a light most favorable to Plaintiff, Plaintiff's arguments that Defendants Mason and Wood denied him due process when they prevented him from presenting documentary evidence and witnesses in his disciplinary hearings fail to meet his burden (under the first prong of the qualified-immunity analysis) to show that "the defendant's actions violated a federal constitutional . . . right." *Patton*, 868 F.3d at 1220. "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5. The due-process claims against Defendants Mason and

Wood for their failure to allow Plaintiff to present witnesses and documentary evidence in his disciplinary hearings are therefore denied.

## 2. Arbitrariness of Disciplinary Actions

The second category of due-process claims appears to challenge the alleged arbitrariness of the prison regulations or their application --i.e., Defendants' categorization of (a) Plaintiff's orange clogs as contraband and (b) Plaintiff's warning of litigation as a "threat." This second category of due-process claims is not related to the procedural due process of the hearings.

First, Plaintiff's only argument about the arbitrariness of the regulation that makes orange clogs contraband is that orange stocking caps were available for purchase in the commissary. (ECF Nos. 38, at 17-18; 95, at 2; 105, at 2-4.)

Second, Plaintiff essentially argues that, under these facts, the threats/horseplay regulation is invalid as applied here because Plaintiff's "threat" involved his constitutional right to bring a lawsuit. (ECF Nos. 95, at 2-3; 105, at 2-4.) In other words, it could not possibly be constitutionally legitimate to punish an inmate for asserting that he may file a legal action. What Defendants were apparently trying to address was Plaintiff's attempt to get his way by strongarming or alarming Ramirez at the pre-grievance stage, and that is what this disciplinary process was trying to head off. So the disciplinary problem for Defendants appears to be the *idea* of the threat, not the *substance* of the threat.[9] Still, what Plaintiff contests is the unfairness--i.e.,

---

[9] Plaintiff also contends that he was unfairly penalized for engaging the grievance process, under the written policy in which inmates were encouraged to try informal means of resolving their issues before filing formal grievances. Here, that involved Plaintiff deciding to write Ramirez a letter about his missing property before filing a formal grievance. But it apparently was not the early informal engagement in the grievance process for which Plaintiff was ultimately penalized; it was the threat of litigation. If Plaintiff's letter had simply reported the missing property and requested its return, it appears there would have been no disciplinary charge. The charge came because Plaintiff said that, if his property was not returned, he would file a legal action. It seems that Plaintiff did not face a disciplinary

the unconstitutionality--of Defendants characterizing his letter warning of a possible lawsuit as a

threat, causing disciplinary consequences.

As to his arbitrariness arguments, Plaintiff fails to carry his burden on qualified

immunity's second prong.

### a. Clearly Established Law

The Court recaps the principles regarding "clearly established law":

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle*, 566 U.S. at 664). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. 731 at 742). Accordingly, the Supreme Court has repeatedly admonished circuit courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019).
>
> "Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other [circuits] must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).
> . . . .
> . . . [W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.

---

process and eventual conviction merely because he wrote a letter preliminary to the grievance process, but because within the letter he warned of legal action if his demand was not met.

*Ullery v. Bradley*, 949 F.3d 1282, 1291, 1300 (10th Cir. 2020) (other citations omitted); *see also Wesby*, 138 S. Ct. at 590 ("A rule is too general if the unlawfulness of the officer's conduct 'does not immediately follow from the conclusion that [the rule] was firmly established.'" (quoting *Anderson*, 483 U.S. at 641)); *Mullenix*, 577 U.S. at 12 (stating "dispositive question [for qualified immunity] is whether the violative nature of the particular conduct is clearly established" and "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad proposition" (quotations omitted)); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (stating burden "quite heavy" because "plaintiff must do more than simply allege the violation of a general legal precept [and] . . . must 'instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited'" (ellipses in original) (quoting *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (quoting *Harlow*, 457 U.S. at 818))).

### b. Plaintiff's Cases

Plaintiff maintains that the law was clearly established in support of his arguments that his due-process rights were violated by the arbitrariness of (i) a prison rule (orange clogs were contraband though orange stocking caps are sold in the commissary) and (ii) application to him of another prison rule (his statement that he might exercise his right to file a lawsuit was deemed a punishable "threat"). To determine whether Plaintiff has met his burden of showing that these rights were "clearly established at the time of the defendant's conduct," *Ullery*, 949 F.3d at 1289, the Court scoured Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, (ECF No. 105), reviewing each of the seven cases Plaintiff cited in his apparent attempt to show that his rights were "'sufficiently clear that every reasonable official would have understood that

[charging and convicting Plaintiff of (a) possessing orange clogs though the commissary sold orange stocking caps, and (b) "threatening" an officer with a lawsuit] violate[d] th[ose] right[s].'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle*, 566 U.S. at 664); *see also Martinez*, 2023 U.S. App. LEXIS 17609, at 7 ("Mr. Martinez has presented no Supreme Court or Tenth Circuit case "where an officer acting under similar circumstances as [the defendants] was held to have violated [the Constitution], [n]or has he shown that the alleged right is clearly established in other circuits." (quotation marks and citations omitted)).

Because they are federal district-court cases ineligible for consideration here (*see Ullery*, 949 F.3d at 1300) the Court declines to review two of the cases cited by Plaintiff: *Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009), and *Sprau v. Coughlin*, 997 F. Supp. 390, 393 (W.D.N.Y. 1998).

Next, the Court reviews the other five cases cited by Plaintiff attempting to meet the second-prong of his qualified-immunity burden. The Court's summary of each case shows that only one of them is perhaps factually close to Plaintiff's case, but that is a single Ninth Circuit case, so would not be enough for Plaintiff to validly argue that "the clearly established weight of authority from other [circuits] must have found the law to be as the plaintiff maintains." *Toevs*, 685 F.3d at 916. And none of the other cases is factually close enough to Plaintiff's case so that Defendants "would have understood" from them that Defendants were, or could have been, violating Plaintiff's rights under the Federal Constitution.

   **i. *Wolff*, 418 U.S. at 539**. Plaintiff uses this case only to support his broad statement that "due process requires an opportunity to present documentary evidence." (ECF No. 105, at 1.)

In *Wolff*, the Supreme Court held that inmates facing loss of good-time credits in disciplinary proceedings must be afforded due process in the form of (i) "advance written notice of the claimed violation"; (ii) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken"; and (iii) allowance "to call witnesses and present [relevant] documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563, 566.

None of these broad strokes of law are in question here. Their applicability is accepted and honored. Neither has Plaintiff done more here than simply allege the existence of general legal precepts, when his burden instead was to show "a substantial correspondence between the conduct in question and [how *Wolff*] allegedly establish[es] that the defendant[s'] actions were clearly prohibited." *See Watson*, 75 F.3d at 577. Plaintiff's citing of this case does not help meet his burden to show the law regarding his claims was clearly established.

**ii. *Armstrong v. Manzo***, 380 U.S. 545 (1965). Plaintiff uses this case solely to substantiate the well-established and unremarkable proposition that "a fundamental requirement of due process is 'the opportunity to be heard.'" (ECF No. 105, at 1 (citing *Armstrong*, 380 U.S. at 552 (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))).)

In *Armstrong*, a father was stripped of parental rights in adoption proceedings of which he had not been notified and for which he was not present. *Armstrong*, 380 U.S. at 547-48. The Supreme Court held his lack of notice and participation in the proceedings denied him the due-process requirement "'to be heard.'" *Id.* at 552 (quoting *Grannis*, 234 U.S. at 394).

This case is not a prison-discipline case, and Plaintiff makes no attempt to even try to analogize it to his. Under the Supreme Court precedent in *Mullenix*, 577 U.S. at 12, the Court is

not entitled to use this "broad general proposition" from *Armstrong*, 380 U.S. 545, a factually dissimilar case, to reach a conclusion that the "violative nature of particular conduct is clearly established . . . in light of the specific context of the case." *Mullenix*, 577 U.S. at 12 (quotation marks and citations omitted).

      **iii. *Dent v. West Virginia***, 129 U.S. 114 (1889). Plaintiff says *Dent* supports the standard precept that "[i]t is undisputed the touchstone of due process is protection of individual against arbitrary action of government." (ECF No. 105, at 1-2.) This very old case involved criminal proceedings in which a defendant was convicted for practicing medicine in violation of a state statute, requiring the practitioner to hold a diploma from a reputable medical school. *Dent*, 129 U.S. at 121-28. The Supreme Court upheld the statute's constitutionality against the defendant's argument that it arbitrarily deprived the defendant of his right and estate in his profession without due process. *Id.* Again, this high level of generality does not meet the qualified immunity's requirements; it has nothing at all to do with prison disciplinary proceedings, and Plaintiff does not try to liken it to his. *See Kisela,* 138 S. Ct. at 1152 (indicating Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality").

      **iv. *Entler v. Gregoire***, 872 F.3d 1031, 1042 (9th Cir. 2017). Plaintiff contends, under this case, "[i]t is undisputed that prison officials cannot punish a prisoner for threatening to sue when it would be unconstitutional to punish a prisoner for actually suing." (ECF No. 105, at 2.)

      It is true that *Entler* is almost exactly on point with this case factually. *See Entler*, 872 F.3d at 1034-36. Entler too was an inmate who tried, according to prison policy, to informally resolve his issue before filing a formal grievance. *Id.* As here, Entler was disciplined for his

threat to sue. *Id.* at 1036. A main difference is that, under this fact scenario, Entler filed his

federal civil-rights action for First Amendment retaliation, *id.* at 1033, while Plaintiff here filed

an action for violation of due process. So, while the facts are on point, the cause of action is

different.

Regardless of all this, the Court

> need not analyze whether this decision is on-point with the facts
> alleged in [Plaintiff's] complaint. This is because a single out-of-
> circuit case does not satisfy the weight of authority approach for
> demonstrating the law is clearly established. Accordingly, even
> assuming the [Ninth] Circuit decision is on-point, [Plaintiff] has
> not carried his burden on the clearly established prong of the
> qualified immunity analysis.

*Swanson v. Griffin*, No. 21-2034, 2022 U.S. App. LEXIS 5179, at *12 (10th Cir. Feb. 25, 2022)

(unpublished) (citing *Routt v. Howry*, 835 F. App'x 379, 385 (10th Cir. 2020) (unpublished);

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009); *Parkhurst v.

Lampert*, 339 F. App'x 855, 861 (10th Cir. July 16, 2009) (unpublished)).

*Entler* is not a Supreme Court or Tenth Circuit case, nor can it alone establish a "weight

of authority," so it is ineligible to be used as clearly established law that would have put these

defendants in the Tenth Circuit on notice that their conduct was unconstitutional.[10] *See Toevs*,

685 F.3d at 916.

---

[10] Further, when the Ninth Circuit determined the law regarding *Entler*'s facts was clearly established, its analysis didn't stick to on-point Supreme Court and Ninth Circuit cases, *Entler*, 872 F.3d at 1042 (citing *Gifford v. Atchison, Topeka and Santa Fe Ry Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982) (Title VII retaliation case); *Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009), and *Sprau v. Coughlin*, 997 F. Supp. 390, 393 (W.D.N.Y. 1998). This Court must rely on on-point Supreme Court, Tenth Circuit, and non-district-court cases in the Tenth Circuit, *Ullery*, 949 F.3d at 1300. It appears that none of these cases sufficiently clearly establish the applicable precedent by the Tenth Circuit's standards. *See id.* A prison officer in the Tenth Circuit would not familiarize himself regarding the precedent applicable to his on-the-job behavior by perusing a Ninth Circuit Title VII case.

**v. *Gifford v. Atchison, Topeka and Santa Fe Ry Co.***, 685 F.2d 1149 (9th Cir. 1982).
Plaintiff cites this case for the concept that there is "no legal distinction to be made between the
filing of a charge which is clearly protected, and threatening to file a charge." *Id.* at 1156 n.3
(citation omitted). This case involved a "Title VII retaliation [action] . . . stating, 'We see no legal
distinction to be made between the filing of a charge which is clearly protected, and threatening
to file a charge.'" *Entler*, 872 F.3d at 1042 (citing *Gifford*, 685 F.2d at 1156 n.3). Plaintiff
apparently got this citation from the *Entler* case, which cited it as an analogous case that the
Ninth Circuit used to support its conclusion that the law was "clearly established." *Id.* But this
case is not a prison-discipline case, nor is it Supreme Court or Tenth Circuit precedent.

These cases are not "'on point'" precedent, in that they do not "'involve[] materially
similar conduct or appl[y] with obvious clarity to the conduct at issue.'" *Martinez*, 2023 U.S.
App. LEXIS 17609, at *5 (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017)
(citations omitted)). The first three of these cases are in the right category--United Supreme
Court cases. However, they are of the wrong level of generality. Plaintiff has cited them to
support high-level, axiomatic due-process principles that everyone can agree on. *See Moses-El v.
City and Cnty. of Denver*, No. 20-1102, 2022 U.S. App. LEXIS 14847, at *30 n.20 (10th Cir.
May 31, 2022) (unpublished) (concluding plaintiff's claims failed on qualified-immunity second
prong when plaintiff cited cases "at too high a level of generality" and neither of two cases cited
were "factually analogous" to case at bar); *Swanson*, 2022 U.S. App. LEXIS 5179, at *7
("[P]laintiffs may not identify their claim through "'extremely abstract rights'" because this
would "'convert the rule of qualified immunity . . . into a rule of virtually unqualified liability.'"
(quoting *White*, 580 U.S. at 79 (quoting *Anderson*, 483 U.S. at 639))); *Frasier v. Evans*, 992 F.3d

1003, 1004 (10th Cir. 2021) ("[T]he precedent must have clearly established the right 'in light of the specific context of the case, not as a broad general proposition.'" (citation omitted)). And the last two cases are Ninth Circuit cases, with only one factually analogous (though not claim-analogous), but even if they both were, "two cases from one other circuit are insufficient to clearly establish the law." *Martinez*, 2023 U.S. App. LEXIS 17609, at *15 (citing *Irizarry v. Yehia*, 38 F.4th 1282, 1294-95 (10th Cir. 2022)); *see also Swanson*, 2022 U.S. App. LEXIS 5179, at *7-8 ("[A]lthough Mr. Swanson attempts to rely on out-of-circuit authority to demonstrate that the right he asserts is clearly established under the weight of authority approach, only one of the three out-of-circuit decisions is potentially on-point. But a plaintiff's identification of a single out-of-circuit case is not sufficient to satisfy the weight of authority approach.").

    Not one of these cases, explicitly or implicitly, leads this Court to conclude that Plaintiff's Federal Due Process rights were "'sufficiently clear that every reasonable official would have understood that what he is doing violates th[ose] right[s],'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle*, 566 U.S. at 664), when charging and convicting an inmate in a prison disciplinary proceeding for (a) possessing orange clogs when orange stocking caps are for sale in the commissary; or (b) a threat toward a prison staff member, when the threat is a lawsuit. This conclusion takes into consideration that "'[t]hough 'a case directly on point' is not required, 'existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate.'" *Ullery*, 949 F.3d 1282, 1291 (quoting *Cummings*, 913 F.3d at 1239); *see also City of Tahlequah*, 124 S. Ct. at 11-12 (parsing and rejecting Tenth Circuit's use of cases with "dramatically different" facts to support Tenth Circuit's conclusion that officers

violated clearly established law); *Swanson*, 2022 U.S. App. LEXIS 5179, at *7 (concluding plaintiff did not carry second-prong burden when he "identified some generally applicable rules of law" but no "Supreme Court or Tenth Circuit case addressing a set of facts sufficiently similar").

Plaintiff has not provided authority that leads the Court to find "the law to be as the plaintiff maintains." *Toevs*, 685 F.3d at 916. Plaintiff maintains that the Supreme Court and Tenth Circuit law, as it was when Defendants charged and convicted him in the disciplinary process, put Defendants on notice that these charges and convictions were arbitrary in a way that violated the Due Process Clause. And he had the burden to provide the case citations to support his contention. *See id.* But, as the above list shows, he has not carried that burden.

The qualified-immunity analysis "may appear unduly formalistic . . . . But this is the task required of [courts] under the qualified-immunity precedents [courts] are obligated to follow." *Ullery*, 949 F.3d at 1301; *see also Lombardo v. City of St. Louis*, 143 S. Ct. 2419, 2421 (2023) (Sotomayor, J., dissenting) ("The 'clearly established' prong of the qualified immunity analysis can pose a very high bar for plaintiffs seeking to vindicate their rights. Even when government officials violate the law, qualified immunity shields them from damages liability unless the 'violative nature of [the] particular conduct is clearly established.'" (quoting *Mullenix*, 577 U.S. at 12)).

Having thoroughly reviewed Plaintiff's opposition to Defendants' summary-judgment motion, (ECF No. 105), the Court concludes that Plaintiff has not met his burden to show his "right was clearly established at the time of the defendant's conduct." *Ullery*, 949 F.3d at 1289. "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard,

the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016).

This alone is enough to award summary judgment here. Plaintiff's federal due-process claims against Defendants Kemple, Mason, Ramirez, and Wood, regarding disciplinary charges and convictions, are thus dismissed.

### 3. Qualified Immunity Conclusion

Plaintiff has not carried his burden under either prong of his qualified-immunity requirements. He neither successfully showed with admissible evidence that Defendants Kemple, Mason, Ramirez, and Wood violated his federal constitutional right to due process in his disciplinary proceedings, nor cited clearly established law showing these defendants should have known that the rule making orange clogs (but not orange stocking caps) contraband, and their application of the rule on threats, were arbitrary in a way that violated Due Process Clause of the Federal Constitution. Thus, these defendants are protected by the qualified-immunity doctrine from further litigation in this matter.

### IV. MOTION TO SEAL

Under District of Utah Local Rule 5-3(b)(7), Defendants move "for an order to file under seal any records marked Private and Protected under the Utah Records Access and Management Act ("GRAMA"), without filing redacted versions of the Exhibits." (ECF No. 87.) Defendants argue that "[t]he Exhibits marked Private and Protected are highly confidential, and include information such as c-notes, physical location information, and inmate disciplinary proceedings," and "prison official and employee declarations" and "Plaintiff's personal grievances," warning that "[a]ccess to these records is subject to specific controls, including both public and

inmate restrictions" and "redactions would essentially nullify the Exhibits at issue in their entirety." (*Id*.)

Defendants' arguments apply to their "*Martinez* report exhibits marked private and protected under seal," (ECF Nos. 87, 89), with the "under seal" designation requested for Defendants' exhibits marked "Protected" or "Private": Exhibits 2-4 (Plaintiff's grievance documents), 8-9 (Plaintiff's disciplinary documents), and 10-14 (Kemple, Mason, Ramirez, and Wood declarations). Defendants contend these exhibits "are extremely sensitive in nature and must remain confidential per Prison Policy, safety concerns and Utah Code § 63G-2-202(4)," so sealing them would "provide a secure way to communicate the sensitive information to the Court without harming the plaintiff and would honor State Defendants' GRAMA obligations." (ECF No. 87.) Defendants further urge that a redaction requirement would mean "the documents at issue essentially . . . containing no information and . . . no practical value." (*Id.*) Defendants' motion is unopposed. In deciding this motion, the Court has reviewed all Defendants' arguments.

The District of Utah's Local Rules recognize that "records of the court are presumptively open to the public," and so "sealing [documents] . . . is highly discouraged." DUCivR 5-3(a)(1). However, "[o]n motion of a party and a showing of good cause, a judge may order that a Document be sealed." *Id.*

Based on Defendants' arguments and the Court's review of the exhibits, the Court sees the sensitive nature of information on Plaintiff's private prison records and need for security as to UDOC's policies on grievances and disciplinary proceedings for inmates. Concluding that good cause exists to seal the documents, without requiring redacted copies, the Court finds

44

Defendants' request narrowly tailored in the protection it seeks; the duration of the seal shall be permanent; and, at the very least, Utah's GRAMA supports the sealing. *See* DUCivR 5-3(b)(2).

## V. CONCLUSION

Defendants Bradbury, Eddleman, Pei, Quayle, Toone, and Weber are entitled to judgment in their favor because of their affirmative defense of Plaintiff's failure to exhaust his administrative remedies. And Defendants Kemple, Mason, Ramirez, and Wood are entitled to judgment in their favor because of their affirmative defense of qualified immunity.

**IT IS THEREFORE ORDERED** that:

**(1)** UDOC Defendants' summary-judgment motion is **GRANTED**. (ECF No. 100.)

**(2)** On the basis of Plaintiff's failure to exhaust his administrative remedies, Defendants Bradbury, Eddleman, Pei, Quayle, Toone, and Weber are **DISMISSED** from this action without prejudice.[11]

**(3)** On the basis of qualified immunity, Defendants Kemple, Mason, Justin Ramirez, and Wood are **DISMISSED** from this action with prejudice.

**(4)** No controversy remaining in this Court, this action is **CLOSED**.

**(5)** Defendants' motion to file exhibits under seal is **GRANTED**. (ECF No. 87.)

**(6)** Plaintiff's motion for sanctions under Federal Rule of Civil Procedure 11(b) is **DENIED**. (ECF No. 107.) Plaintiff does not dispute Defendants' argument that Plaintiff did not observe the requirements of Federal Rule of Civil Procedure 11(c). (ECF No. 114.) The Tenth Circuit has held that it is an abuse of discretion to grant Rule 11 sanctions when the moving party

---

[11] Generally, "courts should . . . dismiss . . . unexhausted claims without prejudice." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

did not comply with the safe-harbor provision. *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir.

2006); *see also Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir.

2012) (reaffirming the *Roth* holding).

      Signed September 26, 2023.

             BY THE COURT

             _____

             David Nuffer
             United States District Judge